## MARQUETTE, HOUGHTON & ONTONAGON RAILROAD COMPANY v. GILBERT MARCOTT.

*Fatal negligence—Verdict and proof must conform to declaration— Concessions bind counsel—Composite charges.*

A declaration for negligent injury must aver the fact and the manner of negligence: and plaintiff should be confined to what is set forth in his declaration.

Counsel's contradiction of the record is of no force.

Defendant's counsel was shown by the record to have told the jury that in a certain contingency they should find for plaintiff. *Held* that he could not afterwards take any ground inconsistent with the concession, or claim to be injured by rulings in accord with it.

Charges made up of selections from the requests of both parties, supplemented by general judicial observations, are disapproved as incoherent, obscure, and sometimes ambiguous.

In charging the jury in an action for fatal negligence, it is improper for the judge to abandon the grounds relied on in the declaration and direct their attention to other considerations as tending to support the action.

Error to Marquette. Submitted June 17. Decided October 8.

TRESPASS ON THE CASE. Defendant brings error.

*W. P. Healy* for plaintiff in error. One who steps

upon a railroad track, except at crossings, does so at
his peril, *Mulherrin v. D., L. & W. R. R. Co.*, 81 Penn. St.,
375; *Mich. Cent. R. R. Co. v. Campau*, 35 Mich., 468;
*Phil. & Reading R. R. Co. v. Hummell*, 44 Penn. St., 375;
*Gillis v. Penn. R. R.*, 59 Penn. St., 129; even those
who are licensed to walk on the track take the risks,
*Sutton v. N. Y. Cent. R. R. Co.*, 66 N. Y., 242; *Ill.
Cent. R. R. v. Hall*, 72 Ill., 222; negligence is not pre-
sumed, *G. R. & I. R. R. Co. v. Judson*, 34 Mich., 506;
unusually high speed is not of itself negligence, *Warner
v. N. Y. Cent. R. R.*, 44 N. Y., 465; it is contributory
negligence for a family with small children to build close
by a railroad track and use the track as a road, *Glassey
v. Hestonville R. R. Co.*, 57 Penn. St., 172; so is allow-
ing a small child to be upon the track unattended, *Jef-
fersonville R. R. Co. v. Bowen*, 40 Ind., 545: 49 Ind., 154.

*F. O. Clark* for defendant in error. Negligence is
usually a question of fact, *D. & M. R. R. Co. v. Van
Steinburg*, 17 Mich., 119; approaching a station with
unusual speed without ringing the bell tends to show
negligence, *Lake Shore & Mich. Southern R. R. Co. v.
Miller*, 25 Mich., 295; a child of tender years cannot
be contributively negligent, *C. & A. R. R. Co. v. Greg-
ory*, 58 Ill., 227; *Chicago v. Major*, 18 Ill., 349; *Chicago
v. Hessing*, 9 Chic. Legal News, 180; *Lynch v. Smith*, 104
Mass., 52; *Kay v. Penn. R. R. Co.*, 65 Penn. St., 269:
3 Amer., 635; *Cosgrove v. Ogden*, 49 N. Y., 255; *Kerr
v. Forgue*, 54 Ill., 482; it is more necessary that a spe-
cial train in going through a settlement should slacken
speed and sound the bell and whistle than if it were on
regular time, *Continental Imp. Co. v. Stead*, 10 Chic. Legal
News, 121; if a railroad company allows a common
custom of walking on their track they are bound to run
through a village more carefully, and evidence of the
custom is admissible as bearing on the question of neg-
ligence, *Reeves v. D., L. & W. R. R. Co.*, 30 Penn. St., 461;
*Smith v. O'Connor*, 48 Penn. St., 222; *F. & B. Turnpike*

*Co. v. Phil. & T. R. R. Co.*, 54 Penn. St., 350; Sherman & Redf. on Negligence, § 11; *Barrett v. Midland R. R. Co.*, 1 Fost. & Fin., 361; *Bateman v. Bluck*, 18 Q. B., 870.

GRAVES, J.   On the 20th of September, 1877, the decedent Joseph Marcott, son of defendant in error, and then about two and a half years of age, was struck fatally by a passing train of the plaintiffs in error on their railroad in Marquette county.   The defendant in error claiming that the injury was the proximate consequence of actionable negligence on the part of the railroad company, sued in his capacity of administrator to recover therefor, and in November, 1878, he obtained a verdict for $1,000.

The company complain that numerous errors were committed.   It is first expedient to observe what the issue was on which the parties went to trial.   Because the controversy is to be confined to the issue and the recovery is to follow it.

Reason and good sense as well as law compel the plaintiff by his declaration in these cases to inform the defendant and the tribunal what the complaint is, and he must not only show that the defendant has been negligent, but must further show in what respect.   The matters of negligence to which the injurious consequence is referred must be properly averred.   *Gautret v. Egerton*, L. R., 2 Com. P. 371.

The declaration here is framed in view of this principle, and no complaint has been made of any lack of particularity.   It assumes to state in what respect the railroad company was considered negligent, and sets forth what matters were relied on as cause of the grievance.   The averment is, that "the death of said Joseph Marcott was caused by the running of the cars of the defendant upon said 20th day of September, 1877, and by the failure and neglect of said defendant to give the signals required by the statutes of this State to be given

at street crossings and other places, and by carelessly and negligently running said train of cars at a high rate of speed that was careless and negligent, and forbidden by the statute of the state in such cases made and provided." The construction of this averment most favorable to defendant in error, is that it charges that the company neglected some signal it was required to give by statute, and ran the train at a rate of speed so high as to be negligent running.

The plaintiff by his declaration confined his cause of action to these two articles of negligence. No other delinquency was imputed as conducive to the injury, and there has been no foundation for proving others against the company.

Another feature of the case should be noticed here. The bill of exceptions states expressly that the counsel for the company told the jury in summing up that their verdict should be for defendant in error in case they found the company did not exercise reasonable care. The counsel has printed a note denying the accuracy of this passage in the record, and giving a reason for not having moved to correct it. This note is of no force certainly, and the suggestion that supposing the observation to have been made, it was merely an admission of law, is a suggestion not sufficient to explain away the effect. The court must consider that the concession was in fact made as represented in the bill of exceptions, and as a consequence must hold that the plaintiff in error is not entitled to take any ground inconsistent with it.

After submitting to the jury to have the case go one way or the other as they should find on consideration of the evidence that the company was or was not negligent in the particular respects charged, it is not competent to assume a discrepant position or claim to have been injured by rulings only bearing on points which the concession put out of controversy.

There was no material disagreement between the

statements made by the witnesses on one side and such as were made by witnesses on the other, except as to the speed at which the train was running and as to whether there were signals by bell or whistle at the passage of the highway and station building. The general descriptive features have not been the subject of difference. The accident occurred about one-third of a mile west of the station building or depot at Champion and between nine and ten o'clock in the forenoon. This station building is one of a little cluster not far apart, embracing a store and two or three dwellings, and about a hundred and fifty feet east, a highway communicating with mines in one direction and with Michigamme in the other, crosses the railroad. About two hundred feet east of this crossing a side track connects with the main one by a sharp curve and about seven hundred feet west of the crossing unites with the main track by another sharp curve. Somewhat remote from the track there is a charcoal kiln, a furnace and two or three mines. The track passes westerly, and nearly a third of a mile that way, and just before it reaches a forest of several miles in extent through which it runs, there is another little cluster of erections comprising six dwellings. One stands on the northerly side and a few feet west of the rest. The other five are in a row on the south side facing the track and only a few feet from it, the most westerly being Marcott's. The little groups here mentioned together with others away from the track and belonging to the station or mine location called Champion—there being no village organization—contains according to the estimate made by witnesses a scattered population of from one hundred and seventy-five to two hundred. Where the track passes Marcott's and for some distance east, the land at the time in question was unreclaimed and unsuitable for passage, and there was no direct way from the little huddle of dwellings adjacent to the unbroken forest, to the store and station building, except by the railroad track, which was straight, and free from anything to obstruct the view and unfenced.

The defendant in error and some others were in the habit of going down the little bank bordering the road bed where it passed his house to the space occupied by the rails and thence pursuing the track on the side of it to the station. He had been section foreman for several years and at the very time in question was serving the company in that capacity about half a mile west of his house. He had left home in the early morning to go about his daily labor, his wife meanwhile having care of the house and charge of their four little children, including decedent. She had no assistant, and the youngest child, an infant, was dangerously sick.

The train was a special or wild one carrying an excursion party, and it passed the crossing and station on its way west without stopping. About five minutes before it appeared the decedent and his little brother a year older, being three and a half, were seen by La Coss, the neighbor opposite, close to their father's door. The approach of the train was soon noticed by Mrs. La Coss and she at the same time saw the two little boys on the track between one and two hundred feet east of their father's house. She called to her husband to rescue them, and he ran and motioned to the train to stop, and the whistle for down brakes was immediately blown. At this time the train was near the children and the oldest was striving to get the youngest off, and when the locomotive was only a few feet away the former got off but the youngest stumbled and was struck. La Coss had got within some five feet of the child but was unable to save him.

Death followed in about an hour and a half. The train was brought to a stand about nine hundred feet west of the spot and about eleven hundred feet from the point where the whistle called for down brakes.

There is something in a catastrophe of this nature, and especially where the victim is a little child, which at once stirs the heart and inflames the sympathies, and in the tumult of the feelings is very apt to excite a hasty

inclination to consider the immediate apparent agency as in some way surely deserving chastisement for the dreadful event, and without any special reference to those considerations which in justice ought to decide the question of culpability.

However generous and noble the natural qualities from whence this trait proceeds, it is the imperative duty of judges and jurors to repress it and sedulously withstand its influence.

The law commands them to rise above such tendencies and inflexibly apply the principles of cold and even handed justice to the facts. The duty may be difficult, but the law is vigorous in its requisition of obedience and it will withhold blame from the defendant unless it discovers there was fault so connected with the event as to have operated as proximate cause of it.

The practice followed at the trial of conveying instructions to the jury by selections here and there from the requests of both parties, supplemented by a few general observations originating with the judge, is very unsatisfactory and has been often disapproved.

In a large proportion of cases where this course is pursued the jury fail to receive the aid to which they are entitled.

The propositions submitted emanate from different minds during the eagerness of controversy, and they have their own peculiar colorings of style and method and usually do not fit well together, even in those cases where the discordance does not extend to positive inconsistency.

If capable of being reduced to a connected and orderly charge, it is many times a task in which twelve jurors will not be likely to agree, and certainly a task which the law does not intend to have imposed. It has sometimes happened that this court has found it difficult to extract from the propositions given any clear rule or direction, even when there was no very serious unfitness

among them.  In such instances the attempt to revise
the case is subject to much embarrassment on account
of the uncertainty there is as to what sense the jury
may have put upon the rulings and as to what explana-
tions in anticipation of another trial can be discreetly
given.

It appears from the bill of exceptions that the plain-
tiff below adduced testimony tending to prove that no
signal by bell or whistle was given at the crossing or in
passing the station building, and his witnesses who were
near the scene and testified on the subject, gave it as
their opinion that the train was running at the rate of
forty or forty-five miles an hour.  He, it will be remem-
bered, was half a mile west, and that the train was
halted between the place of the accident and the place
where he was.  Still he testified without objection that
when it passed him it was going fifty-five or sixty miles
an hour.  If he was correct it must have started and
reached that high speed in the space of half a mile.

On the part of the company the testimony tended to
show that the bell was rung and whistle blown when
the train approached the crossing, and that both forms
of warning were continued until the switch, some five
hundred feet west of the station building, was passed,
and that the speed at the crossing was not more than
twelve miles an hour and at Marcott's not to exceed
twenty or twenty-five.

In the course of the examination of the company's
witnesses it was ascertained that two passenger guests
sat in the cab with the engineer, and that the brakes
were not air brakes.

The plaintiff below at length contended that the jury
were to consider in determining the liability of the com-
pany for negligence, the omission to fence in the track,
the want of air brakes, the failure to give signals, the
high speed of the train and the occupation of the cab
by the two guests,—it being insisted that the presence of

these persons sufficed to hinder the engineer from seeing the child, as he otherwise would have done, in season to have saved his life. It was further claimed that there was an implied license to the public to use the track from Marcott's as a footway and that this circumstance made it incumbent on the company to use extraordinary care in the running and management of trains there.

The rulings to the jury were properly, such however as in effect, we think, to negative the claim in regard to the want of fence and of air brakes, and also that concerning the right of foot passage. And the instruction relative to the imputed neglect to give warning, can not be held to have authorized a finding on the evidence, that the neglect, if it occurred, had any appreciable connection with the accident, and we are quite unable to discover any ground in this record for any charge that would.

The instructions given to the jury appear to have virtually ignored the claim that there was culpable fast running, and indeed it was evidently not competent to lay it down as matter of law that Marcott's neighborhood was a place of such common bustle on or about the track or so otherwise conditioned as to require the company to confine their trains there to any particular or exceptional low rate of speed. And we are not able to discover any thing in the case which would justify such a conclusion as matter of fact.

Looking further we find scattered through the charge very decided evidence that the judge deeming other grounds untenable led the jury to regard the presence of the strangers in the cab with the engineer, and their diversion of his attention and taking up room which was needed to enable him to keep a proper lookout, as matters which they were entitled to consider and might accept as being such negligence on the part of the company as would support the action. And the special find-

41 MICH.—56.

ings leave no doubt that in giving their verdict the jury were governed by that view.

It is not necessary to enlarge by quoting from the. record. The grounds for this conclusion are too clear to admit of question. The issue submitted for trial was therefore wholly set aside and abandoned, and the company was convicted of negligent conduct not charged in the declaration or even hinted at as having had any influence in causing the injury complained of.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.