# OCTOBER TERM 1881.[*]

GILBERT MARCOTT, ADM'R v. MARQUETTE, HOUGHTON & ONTONAGON RAILROAD COMPANY.

*Rulings on questions of fact—Negligent injury—Taking case from jury—Credit of witnesses—Lookout on locomotive—Speed of trains—Fencing railroad tracks.*

Rulings cannot be made on error on questions of fact, or on questions of law that have not been decided against the plaintiff in error, and if such rulings have been made, they cannot bind the action of the jury on a new trial.

Negligence in injuries inflicted by railroad trains upon individuals is a question that depends upon the circumstances and can rarely, if ever, be absolutely defined as matter of law; and in determining whether there has been negligence all the circumstances must be considered together.

The care required of all persons doing business involving danger, must be such as is reasonably calculated to avoid serious consequences therefrom, so that if there are such consequences they may be considered as accidental only.

In an action for negligent injury negligence which did not contribute to the injury need not be regarded.

A case cannot be taken from the jury unless it is plain upon the strongest showing made by any of the witnesses, that there is no cause of action.

A case must be absolutely free from conflict before it can be taken from the jury.

Courts cannot assume that witnesses whom they most credit will be followed by the jury, and no matter how dissatisfied a court may be with the conclusions of the jury, it cannot usurp their functions.

The lookout upon a locomotive must be as efficient as the circumstances require, and especially so when the chances of access to the track are greater than usual.

It is a question for the jury whether a special train can be run without negligence at such a speed as to make it difficult to check its speed within a reasonable time and distance.

---

*Continued from Vol. 46.

A railroad train ran over a child on the track. It appeared that there were visitors in the cab of the engine, and that the presence of strangers without leave was prohibited by rule. *Held,* that it was proper for the jury to consider the fact with other circumstances as bearing on the question of negligence.

The statutory regulations concerning the fencing of railways apply north of Saginaw river except that the statutory penalty for neglecting to build them is not in force. Act 98 of 1875.

Error to Marquette.    Submitted June 24.    Decided October 12.

CASE.    Plaintiff brings error.    Reversed.

*W. P. Healy* for plaintiff in error.    There can be no conviction of negligence for allowing visitors in a locomotive cab on proof only that they might have obstructed the engineer's view:    *Quincy Mining Co. v. Kitts* 42 Mich. 41; a railroad company is not liable for running over a child that is using its track as a play ground unless it does so maliciously or with gross carelessness: *Morrissey v. Eastern R. R.* 126 Mass. 377; *Illinois Cent. R. R. v. Godfrey* 71 Ill. 500; *Railroad Co. v. McLaughlin* 47 Ill. 265; nor where the child's parents are careless in looking after it: *Jeffersonville R. R. v. Bowen* 40 Ind. 545; *T. W. & W. Ry. v. Grable* 88 Ill. 442.

*F. O. Clark* for defendant in error.    A case can be taken from the jury only where it is open to but one opinion: *Jucker v. C. & N. W. Ry.* 52 Wis. 150; *Improvement Co. v. Munson* 14 Wal. 448; *Teipel v. Hilsendegen* 44 Mich. 461; railroad trains should run through cities and villages at such moderate speed as to be under immediate control: *Costello v. Syracuse B. R. R.* 65 Barb. 92: 12 Am. L. Reg. N. S. 666; *Daley v. Nor. & Worcester R. R.* 26 Conn. 595; railroad companies are bound to take the greatest precautions for the safety of life: *Chic. & Alton R. R. v. Gregory* 58 Ill. 228; persons conducting an unusually hazardous business must use all known means to avoid accidents: Sherm. & Redf. Negligence § 7; parents are not negligent in not keeping constant watch over children:

*Kay v. Penn. R. R.* 65 Penn. St. 269 : 3 Amer. 635 ; *Chicago v. Major* 18 Ill. 349 ; *Chicago v. Hessing* 9 Chic. L. News 180 ; *Mangam v. B. R. Co.* 38 N. Y. 455 ; *O'Mara v. H. R. R. R. Co.* id. 445 ; *Railroad Co. v. Gladmon* 15 Wal. 408.

CAMPBELL, J.   Plaintiff in error sued defendants for the death of his child, a little boy of two and a half years old, who was killed by an irregular train consisting of a locomotive and a single car of invited guests on an excursion from Marquette down the line.   The train had just passed by Champion station, and the boy was killed at a point 1800 feet west of it, between 10 and 11 o'clock of the morning of September 20, 1877.

It appears that the child and a brother not more than two years older were walking on the track westward, and nearly opposite plaintiff's house, when the older boy was in some manner startled by the approach of the train and tried to get his little brother off, but the latter fell and he could not.   It appears further that a neighbor named La Coss who lived across the track a little westward from plaintiff was sitting on his steps at work, with his back to the road, when his wife called to him that the children were on the track, and he rushed at once and signalled the train by throwing up his arms, and ran to save the children.  The oldest was off and he had reached within five feet of the place, when the train struck the youngest and fatally injured him in the head.   It is not shown by the record—which does not set out all the testimony—whether the child was thrown from the track, or whether the train passed over him.   The whistle to put on brakes was blown, as La Coss testifies, about 215 feet from the place of the injury.   The train ran 900 feet further before it stopped.   The distance traversed by La Coss was 175 feet.   He testifies that when he first started and saw the children the train was on the switch west of the depot.   The testimony is that the place of injury was 1800 feet from the depot, and that the switch enters the main track between 600 and 700 feet from the

depot, or between 1100 and 1200 feet from the place of the injury.

No one on the train appears to have known what had occurred, until it reached a station several miles further off, to which the news was transmitted. The engineer and fireman did not, so far as appears, or is claimed, see the children or either of them, and no inquiry was made at the time into the cause of stoppage. The track was level and objects on it could be seen, according to the testimony, from a quarter of a mile east of the depot, or something over half a mile eastward from the place of the injury, and for about the same distance westward. The track was not fenced. Several houses were scattered along the road between the depot and plaintiff, who occupied the most westerly of them all, and who at the time of the injury was at work on the road about a mile west of his house, as section foreman of the road. The action being based on the negligence of the defendants' servants, in not using such care as was incumbent on them under the circumstances, the facts set out calling for care, and the failure to use it, were in brief the unfenced road, the omission to give signals, the excessive speed of the train, the lack of adequate means of stoppage, the failure to keep such a lookout as should have been kept, and the existence of special hindrances to a vigilant lookout in the presence of strangers in the cab of the locomotive, whose being there tended to interfere with the view and to distract the attention of the engineer and fireman.

The circuit judge, while himself of opinion that there was evidence for the jury on several matters of importance, took the case away from them, and directed a verdict for the defendants, and did this on the ground that this Court had on a previous hearing on error declared there was no negligence apparent from the record as then made up, and that if there was none in those respects, the evidence of the presence of the visitors was not by itself sufficient to show a cause of action.

Before considering the questions presented by the present record, it is necessary to refer a moment to the misappre-

hension of the circuit judge concerning the action of this court, in the case of the *Marquette, Houghton & Ontonagon R. R. Co. v. Marcott* 41 Mich. 433. In that case the judgment was reversed because it was given to the jury on a theory not set up in the declaration. It was not held that there was not sufficient evidence to go to the jury on other points, but on the contrary attention was called to the fact that the defendants' counsel on the trial admitted to the jury that the plaintiff was entitled to a verdict if they did not use reasonable care, and it was held that the ground could not be shifted in this Court for a different one. Upon several points sought to be raised there the rulings below were such as to be subject to no complaint on the part of the railroad, and the only ground passed upon by this Court for reversal was the occupation of the cab by visitors,—no such averment being contained in the declaration.

There was no ruling whatever, and there could have been none, upon the questions of fact, which belonged to the jury, or upon questions of law which had not been decided against the party bringing error. In the case of *Richards v. Fuller* 38 Mich. 653, we had occasion to hold it erroneous to instruct a jury to follow the findings of this Court as precedents on questions of fact; and we certainly did not imagine that any one could suppose we were giving any rulings in this case which could anticipate or bind the action of a jury in a future trial on a question of fact, or on any question of law or fact which was not presented for decision by the record.

Recurring to the present record, the question presented is whether there was anything to go to the jury. If there was, then the case should have been submitted.

The responsibility of railroads for injuries to persons by trains, can very seldom, if ever, be determined on pure questions of law. Negligence depends too much on the circumstances of the transaction complained of, to be capable of any absolute definition by special facts. In order to create liability something must have been brought about which would not probably have happened if the party com-

plained of had not failed to use the care and precaution which it was wrong not to use under the circumstances. But in considering this all the circumstances must be regarded. They cannot be taken up one by one and the act be pronounced right or wrong in view of any of them isolated from the rest.

Thus, looking at the present case, it cannot be said as a matter of law that there is any necessary inference of actionable negligence in having no fences, or in running at high speed, or in not having air-brakes, or in the failure to see persons on the track, or in allowing strangers in the cab. But it is possible that the existence of any or all of these conditions may impose duties of greater vigilance than would be required by safety in their absence.

The rule of law is the same as that of prudence in this respect,—that the care to be expected of all persons exercising business involving danger, must be such as is reasonably calculated to avoid serious consequences from that danger. And where the danger is such as to imperil human safety, the care should be such, and only such, as may be reasonably regarded as enough to prevent the probability of mischief, so that if it occurs it may be rightly treated as accidental and not negligent. And negligence which does not contribute to results need not be regarded.

The testimony in this case was partly concurring and partly conflicting. It is undisputed that the track was unfenced, that there were none but common brakes, that the engine was not reversed, that the train passed the station without stopping, that two persons were in the cab not belonging there, that the engineer and firemen did not see the children at any time, and that they could have been seen by any one looking down the track so long as they were on it, and that no inquiry was made into the cause of stopping the train.

There is a conflict concerning the giving of signals,—concerning the speed of the train, and some matters collateral.

So far as the record shows we do not understand that there is any dispute concerning distances. There was at all events evidence on them.

Where a case is taken away from the jury, it cannot be authorized unless upon the strongest case made by any of the witnesses, it is manifest there was no cause of action. Courts cannot assume that the witnesses whom they would most credit are to be followed by the jury. And however much they may be discontented with the result, they cannot usurp the functions of the jury. A very striking illustration of this rule is found in the recent case of *Dublin, Wicklow & Wexford Ry. v. Slattery* L. R. 3 Appeal Cases 1155, where the house of lords, very much against its own view of the facts, sustained a judgment involving some of the features of the present case. And a similar holding was made in *Bridges v. North London Ry. Co.* L. R. 7 H. of L. 213. The doctrine is well settled here. The case must be absolutely free from conflict before it can be taken from the jury.

In the record before us, assuming as we must for this particular discussion that the plaintiff's case might have been accepted by the jury, we have this possible state of facts, the probability of which we cannot pass upon.

There were witnesses who swore that there was no sounding of bell or whistle before, at, or after the highway crossing or passing the depot, nor any signal until the brake-whistle was given just before the child was reached. This testimony further—if believed—tended to show that an irregular special train—out of ordinary train time—came thus without warning through a small settlement over an unfenced track at a speed said by some witnesses to have been double that of an ordinary passenger train, and forty miles or more an hour; that the children, one of whom was killed, were seen on the track by the man that tried to rescue them when the train was 1100 or 1200 feet distant from them; that there was no such lookout by engineer or fireman during that distance as led to their notice; that the train ran that distance when that person was running at the top of his speed 175 feet, and that when the brakes were put on, the train, consisting only of one car besides the locomotive, ran about 1100 feet before it came to a stand.

If the signals were not given, there was a distinct violation of law, which we cannot as matter of law say had no effect on the result. It appears beyond question that La Coss would have saved the child if he could have reached it a very little earlier, and that he started as soon as he had knowledge of the train. The same result would have been reached if the train had been two or three seconds later at the point of injury, and this might have been done either by a very trifling diminution of speed, or by braking or otherwise.

If the testimony to the contrary is true the signals were given, and the speed was not excessive. But as already suggested this was for the jury. The same may be said in regard to the efficiency of the lookout. There can be no doubt it should be such as reasonably required by the circumstances and that it should be more careful where there is risk of access to the track than where it is less likely. And it cannot be said that if the speed of an unexpected train is very great this risk is not more serious than otherwise. The necessity of a careful lookout is recognized by the unwritten law of navigation, and it is apparent on railroads. The strict requirement of air-brakes laid down by statute as indispensable on regular passenger trains (Laws 1875 p. 137) assumes there will be such vigilance as will enable trains to be checked at the first appearance of danger.

This leads to the consideration of another question, relating to brakes. The statute requiring air-brakes or their equivalent is confined in terms to regular passenger trains. Laws 1875 p. 137. That statute was amended from the statute of 1873 by requiring such brakes to be applicable to every car on the train, whereas before there was no such sweeping requirement. The need of such brakes is evidently governed somewhat by speed—freight trains being slower than passenger trains, and being also made up, as the witnesses show, so as to make air-brakes inapplicable. The statute does not in terms reach any irregular trains. But it was a question for the jury whether a special train could be

run without negligence at such a speed as to make it difficult to check its speed within a reasonable time and distance.

It appeared on the trial that the presence of strangers without leave on the cab is prohibited.   On steamers the rule forbidding access to the helmsman has always existed as a measure of precaution against having his vigilance diverted. The jury had a right to consider it with the other circumstances.

It was claimed on the hearing before us that the statutory regulations concerning fences had no application north of Saginaw river.   This is an error.   Section 15 of article 4 of the general railroad law as amended in 1875 (Laws 1875 p. 139) is devoted to this subject, and makes full and explicit provisions on the subject, and imposes a liability for damages for injuries occurring from the want of fences, and also a penalty of $200 a week for the omission to build them. The proviso in regard to fences north of the mouth of Saginaw river, is that if not· built as required by that section " the corporation owning or operating such line of road shall not be liable to said penalty of $200 per week, but shall be liable to all the other provisions of this section." The propriety of fencing is thus very explicitly declared, and the company required to use diligence not to incur risks from the want of it.

Upon the record we think there was evidence for the jury which would have authorized them to inquire whether under all the circumstances there was actionable negligence.

Judgment must be reversed with costs and a new trial granted.

The other Justices concurred.