HUGGETT *v.* ERB.

1. RAILROADS—NEGLIGENCE—TRESPASSERS—PERSONAL INJURIES.

Where the evidence, in an action for personal injuries to an infant under three years of age, tended to show that if either engineer or fireman had maintained a lookout along the track they must have seen plaintiff and another child on the track and discovered their size and helpless position in ample time to have stopped the train, and where the engine was running through a populous section of a city, across numerous street intersections and along a portion of the track which the public had used extensively as a way and traversed continually, and there was evidence of an eyewitness that those in charge of the engine were not looking ahead along the track, the trial court erred in directing a verdict for the defendant, on the ground that no actionable negligence was established.

2. SAME—INFANTS.

While children *non sui juris* who invade private property are technically trespassers, they are not wilful trespassers, knowingly doing a wrong or incurring risk, in a sense which would legally charge them with negligence or personal responsibility as in the case of older persons who are not under disability.

3. SAME—STATION AND GROUNDS.

Although the infant was injured on defendant's station grounds, and defendant had posted warning signs forbidding trespassing, where the public, nevertheless, made frequent use of the right of way to pass between the street and defendant's station, and the child was too young to comprehend the warning or the danger, the employees of the defendant railroad corporation were required to exercise care and prudence to prevent an injury to the child on a clear stretch of track away from the confusion of yard work and freight cars, at a point where the public were accustomed to frequent the tracks as a way of travel.[1]

[1] The question of the care required of railroad companies to prevent injuring small children upon the track is treated in a note in 25 L. R. A. 784.

As to the duty to keep lookout for infant trespassers on railroad tracks, see note in 8 L. R. A. (N. S.) 1079.

4. SAME.
    Accordingly, the questions as to the extent to which defend-
    ant's track was traveled at the place of the accident, de-
    fendant's knowledge of the use, and the degree of care
    required in operating trains in that locality, should have
    been left to the jury.

Error to Gratiot; Searl, J. Submitted May 1, 1914.
(Docket No. 113.)  Decided October 2, 1914.

Case by Eva Huggett, by next friend, against New-
man Erb and others, receivers of the Pere Marquette
Railroad Company, for personal injuries. Judgment
for defendants on a directed verdict. Plaintiff brings
error. Reversed.

*Kress & Dunham* and *Chapman, McNamara & Mat-
thews,* for appellant.

*Bills, Parker & Shields* (*John T. Matthews,* of coun-
sel), for appellees.

STEERE, J. Plaintiff, a child two years and eight
months old, was run over and seriously injured by
one of the Pere Marquette Railroad Company's west-
bound trains as it was leaving the city of Alma at 1:40
in the afternoon of May 17, 1912. This action is
brought by her father, as next friend, against the re-
ceivers of said railroad, to recover for the injuries she
sustained.

The declaration originally filed alleged as action-
able negligence a failure of duty to give proper warn-
ing of the approach of the train, to keep it under con-
trol, to appreciate the danger, to keep a sharp lookout
ahead, to use every possible means to stop the train
before striking the child after she appeared upon the
track, etc., whereby, and by reason of the train being
run in "a wilful, wanton, reckless, malicious, cruel, in-
human, and grossly negligent manner, (it) struck

plaintiff, who was then there upon said tracks of defendant without any fault or negligence on her part." During the progress of the trial, the declaration was amended, against objection and by leave of the court, by adding an allegation that, for more than 10 years prior to the time of said accident, that portion of the track where it occurred was customarily and freely used by the public as a thoroughfare; that it was the custom of residents of Alma, and other persons going to and from the passenger station of defendant and other places to which the track afforded most convenient travel, to pass on foot along defendant's main track at that point, of which fact defendant, its agents and employees, had full knowledge, by reason whereof it was its and their duty to anticipate the presence of persons upon that part of the track, and to particularly keep a vigilant watch, exercise special care, give due warning, etc., with reference to such custom and consequent increased danger, which duty defendant utterly neglected.

At the conclusion of plaintiff's testimony the court directed a verdict for defendant on the ground that the child was a trespasser upon the track to whom defendant owed no duty, except not to run over her, if possible to avoid it after discovering her presence; that trainmen owed no special duty to keep watch for trespassing children on the track more than for adults; and, it being conceded that the trainmen did not discover plaintiff upon the track or have any knowledge of her presence there until after the accident, no actionable negligence was shown.

The accident occurred about 750 feet west of the station and water tank at which the train had stopped, in a resident portion of the city where the track crosses the north part of a block lying between two north and south avenues named Park and Lincoln; Park bound-

ing. the east side of the block, nearest to the station, and Lincoln the west. These two north and south avenues are crossed by Center street, which, running east and west, bounds the block on the north. Going west from the station, the track bears somewhat northerly at an angle with the lines of lots and streets of the' city until it enters the north half of said block between Park and Lincoln avenues, where it swings by an increasing curve more to the north and leaves the block near its northwest corner passing to Center street, thence crossing said street and Lincoln avenue diagonally at their intersection and entering the block lying directly to the northwest. The tracks of the Ann Arbor Railroad Company are upon the same right of way and parallel defendant's tracks on the north, with a space of 9 or 10 feet between the two from the station to where plaintiff was struck, and beyond. The track in that locality is nearly level, with a slightly rising grade west of the station, from which there is a plain and unobstructed view along the track past where plaintiff was injured, to a station post located 87½ feet easterly from Center street towards the depot.

On the right of way east of Center street, and near where plaintiff was injured, stood a sign erected by defendant many years previously, upon which was painted in large letters "Railroad grounds—trespassing strictly forbidden;" but it was conclusively shown that it was and had been for many years an uninterrupted custom of the public to freely and frequently travel back and forth along the track from Center street and beyond, to and from defendant's station and other points. Witnesses who had been in the habit of so using the track, and persons living in the vicinity, testified that it was customarily and habitually traveled, by those having occasion, as freely as a public thoroughfare; that persons could be seen traveling

the track there almost every hour in the day; that, any time one happened to look, some person or persons could be seen on the track going one way or the other; that it was used as a highway generally by the majority of persons making all trains; .that both adults and children used the track each day as a way of travel, and it would be safe to say 30 or 35 people use it ·daily. George Cowles, who had been in the employ of defendant as brakeman and conductor several years, and was intimately acquainted with the road at that point, testified that the people of Alma used the track "as much .as a public thoroughfare," and they always had, since he was familiar with it; that both adults and children were walking the track daily; that he noticed this when he was running trains as conductor and working on them as brakeman. ·

When injured, plaintiff was on defendant's main track between the two avenues mentioned, near the middle of the block, east and west, where the track curves northerly and about 160 feet southeasterly along the track from Center street. The day was clear, and when on the track she was in plain view from the water tank and station, and from any point along the track between. The train had taken water at the tank opposite the west end of the passenger station, and, starting from there, had reached the speed of eight to ten miles an hour where the accident occurred.

Plaintiff's family lived on Maple avenue, two blocks west of Lincoln avenue and half a block south of Center street. Before the accident she was last seen at home not long after the family had finished their noonday meal, to which they sat down about 12:30 p. m. She was then playing in the yard with a neighbor's little boy, nearly a year older than she. Shortly thereafter her mother found that the children had disappeared, and the mother of the boy discovered their

absence at about the same time. The two mothers were searching for their children when the little girl was injured.

The most graphic description of the accident is given by Mrs. Lois Powell, who lived on the south side of Center street, west of the track, and was hanging out clothes in the yard south of her house at the time. Her attention was called to the approaching train as it left the station, and when it was just west of Park avenue she noticed the two little children alone on the track. She immediately hurried towards them, calling to them to "get off the track," and waving a cloth at the fireman, who was on the side next to her and looking south out of the side cab window, but apparently did not notice her or them. The train did not slacken, and before she reached the children it ran over the little girl, cutting and bruising her badly, crushing an arm so that it was found necessary to amputate it as soon as medical attendance was procured. The little boy moved off the track in time and was not injured. Mrs. Powell testified that when she noticed the children upon the track the locomotive was within from 25 to 50 feet of them; about 50 feet being her last judgment.

In support of the directed verdict for defendant, counsel urge that plaintiff was a trespasser upon the track, and defendant owed her no duty except not to injure her after she was discovered; that there is not only a total absence of proof that any of the trainmen did discover her at all but it is shown they did not, and evidence is wanting to prove that it would have been possible to stop the train and avert the accident after the time she is shown to have been on the track. Defendant's counsel say in their brief:

"They fail to show that the child was upon the track a sufficient length of time or distance ahead of

182 Mich.—34.

the train, so that it would have been possible to have stopped the train in time to avert the accident. As we have pointed out in our statement of fact, 45 feet is the greatest distance shown by the testimony, or 50 feet at the outside, that the train was east of the child when she appeared to Mrs. Powell upon the track."

Counsel also inadvertently say:

"This is the only evidence in the record showing that the children were in a perilous position at any time before the engine struck the plaintiff."

Mrs. Powell is not the only witness upon that subject. Her daughter Hulda had just previously stepped to the door for a moment to scrape some victuals off from a dish, when she noticed the train at the station and the two children on the Park avenue crossing. Two or three minutes later she heard her mother scream, and, going to the door, saw the train passing Center street after running over the little girl. A Mrs. Brown, who lived at the corner of Park avenue and Center street, saw the two children, just before the accident, on the track about 100 feet west of Park avenue crossing, playing along the track and moving west. She testifies:

"When I saw them on the track I knew the train was back here at the station. * * * There was no one in my house with me but my little baby two years old. When I saw the children on the track I went over to Mrs. Whiting's to leave my child there so I could go and get the children off the track. But I did not leave my child there, because she was not at home. The children on the Pere Marquette track were playing, gradually going down the track west. When I found Mrs. Whiting was not at home, I went back home. I was excited. I did not know what I might do, but I went in the house. I heard the train. The train went through, and I knew I could do nothing."

Plaintiff's brother Orla, under 13 years of age, and

a companion named Jay Glover, 10 years old, saw the
children on the track when the approaching train was
east of Park avenue. Orla had been directed by his
mother to look for his sister at the time her absence
from home was discovered, and Jay accompanied him.
The two boys had gone east on Center street, drawing
a little wagon with them, to the corner of Center street
and Park avenue, when they saw the train coming,
and about the same time, on looking across the block
to the railroad, between two houses, they discovered
the two children going westward on the track in the
path of the approaching train, which Orla testified
was then east of Park avenue. He ran towards his
sister, Jay following him, but was not in time to
rescue her. Jay testified that when they saw the
children the train "was right back of us coming from
the depot. It was back of Park avenue towards the
depot."

The block in which the accident occurred is 332 feet
wide, east and west. She was struck just west of the
middle of the block. Park avenue is 66 feet wide. The
water tank from which the train started was 752 feet
distant. There is abundant evidence tending to show
that this small child, barely more than an infant, was
upon the track and in plain sight of those upon the
approaching engine much further away than the dis-
tance required to stop the train. At its maximum
speed in approaching her, 8 or 10 miles an hour, it
could have been stopped in from 50 to 150 feet.

Cowles, the former brakeman and conductor, who
was acquainted with the particular engine used that
day, and had often ridden in the engine when head
brakeman, testified that from the water tank going
west, on either the engineer's or fireman's side, there
was an unobstructed and plain view as far as the sta-
tion post and pretty close to Center street; that he
was familiar with the engine, number of cars, weight,

manner of control of the train, etc., and, when going from 8 to 10 miles an hour, it could have been stopped on that track and grade in from 50 to 75 feet. The fireman of the engine stated it could be stopped in from 100 to 150 feet.

Assuming the testimony in behalf of plaintiff to be true, as we must in passing upon a directed verdict for defendant, it tends to show that had either the engineer or fireman on that train looked ahead along the track at any time while they were covering the distance from the station to the place of accident, until so close that the front of the engine obscured their view, they must have seen these little children upon the track unattended, and discovered their size and helpless condition in ample time to have checked or stopped the train and avoided the accident. So far as there is testimony on the subject, neither kept watch ahead of this train, which they were running through a populous portion of Alma, where there were frequent crossings, and where it was so customary for the public to travel along that portion of the track that persons could be seen upon it almost any hour of the day. The fireman testified that he was not watching after the train started; that as it started he pulled the bell and looked ahead to see that the track was clear, and then busied himself putting in a fire, after which he got upon his seat on the left side of the cab, and just as he did so he saw a little boy on the side of the track right close to the engine, but did not learn they had run over a child until they reached the station beyond. The engineer was not a witness, and the only direct evidence as to his vigilance is by Jay Glover, who testified that, while running towards the children on the track, he looked up at the cab of the engine as it was close upon them and saw the engineer with his back towards witness, looking out across the river on the left side of the tracks.

It is contended in behalf of plaintiff that she was not a trespasser upon the track, both because the public generally, including children, had constantly used this track as a thoroughfare for many years, to the knowledge and with the acquiescence of defendant, and this child was of such tender age as to be incapable of becoming a trespasser.

It is said in 33 Cyc. p. 756: "A child, although *non sui juris,* may become a trespasser" on a railroad track, citing, amongst other cases, *Trudell* v. *Railway Co.,* 126 Mich. 73 (85 N. W. 250, 53 L. R. A. 271). In that case the court held that a boy seven years of age, playing upon the track, was a trespasser as a matter of law, and that the engineer was justified in believing he would step off the track in time, saying:

"There is no reason in this case for saying that he did not apprehend the danger, nor that he was of immature years, and must therefore be excused from exercising any care."

Thus evidently deeming it important to point out that he was not *non sui juris; i. e.,* an infant "not of sufficient age and discretion to care for his own safety and render it prudent for him to go alone."

While it has been squarely held in some jurisdictions that such children, however young, are nevertheless trespassers, and in others that they are not, the tendency of our decisions is to recognize a distinction in their favor in certain particulars. *Marquette, etc., R. Co.* v. *Marcott,* 41 Mich. 433 (2 N. W. 795) ; *Id.,* 47 Mich. 1 (10 N. W. 53) ; *Keyser* v. *Railway Co.,* 56 Mich. 559 (23 N. W. 311, 56 Am. Rep. 405) ; *Battishill* v. *Humphreys,* 64 Mich. 494 (31 N. W. 894). In the latter case the court said of an infant three years old:

"A child of such a tender age as to be incapable of negligence cannot well become a trespasser."

In *Keyser* v. *Railway Co., supra,* it is said:

"I do not think that an infant boy, only two years and six months old, walking or lying down upon the track of a railroad, becomes a trespasser to the extent of subjecting himself, without the right of redress, to the reckless or negligent acts or omission of the defendant. * * * Under all the circumstances stated in the record, I do not think that such a lookout as was called for by the appearance of the child upon the track was observed by the trainmen, nor that the plaintiff is 'compelled to submit' to consequences so serious as those appearing in this case, because he strayed upon defendant's track, when the injury could have apparently been avoided by proper care and caution exercised by defendant's engineer."

Conceding that children *non sui juris,* invading private property, are technical but unconscious trespassers, as would be a wandering animal, the view is sustained by these cases and abundance of other authority that they are not wilful trespassers, knowingly doing a wrong or incurring a risk in a sense which could legally charge them with negligence or personal responsibility, as in the case of older persons not under such disability.

It is urged in behalf of defendant that this accident occurred on its station grounds, which it was not obliged to fence, and where it posted a notice forbidding trespassing, and that:

"Where a railroad company has posted warning notices along its yard limits, notifying all persons to keep off the tracks, it is not liable to a child for injuries which it receives by going on a track filled with cars liable to be moved at any time, on mere proof that children are in the habit of playing on or near the tracks." *Katzinski* v. *Railway Co.,* 141 Mich. 75 (104 N. W. 409).

This quotation is from the syllabus of the case, the facts of which are meagerly stated. The child was 6½ years old, and was playing at or near a place

where there were four tracks filled with cars liable to be moved at any time. She was injured while a crew was coupling cars, without any notice or knowledge that she was on the track. In disposing of the case, the court said the fact, if shown, that children were in the habit of playing on or near the tracks would not tend to fasten any liability on the defendant, under the circumstances of that case. A somewhat similar case held, with little discussion, to be ruled by the last mentioned, is *Seeley* v. *Railway Co.*, 157 Mich. 688 (122 N. W. 214), in which a boy eight years old, playing with companions beside a track where a crew was switching, ran for a ride and climbed upon the brake beam of a flat car, grasping the hand holds on the end. In attempting to jump off, he fell under the wheels and was killed. We see nothing in those cases controlling here. They were decided under the special facts shown, and the circumstances disclosed are very different from those under consideration now. In both of those cases the children were of sufficient age, so that the question of their contributory negligence was open. They were supposed to possess sufficient discretion to take care of themselves, and the trainmen were not required to neglect their ordinary duties to watch them, or bound to give special warning before discovering them in actual situations of danger. The distinguishing and distinctive features here are that, while yet nominally in the station grounds, the accident occurred on a clear stretch of track, away from any confusion of yard work or accumulations of cars, after the crew had settled down to its run, 750 feet from the station house, had crossed two streets, and was departing through a populous portion of the city, not crossing its streets at right angles and at a point where the public generally was accustomed to extensively use the tracks as a way of travel, and the injured child was of such tender years as to be incapable

of appreciating the presence of danger or, apparently, even understanding what was meant when called to "get off the track."

If the accident had occurred at a crossing, or there was testimony tending to show that the child was seen from the engine in probable time to stop or check the train so as to avoid injuring her, it must be conceded that the case should have been submitted to the jury. Plaintiff's testimony tends to show that, had the engineer or fireman looked out ahead of the train, they must have seen her. It was their general duty to run the train with reasonable care and watchfulness. It is neither just, nor sound in principle, to say that, by avoiding seeing her through neglect of duty, they can protect defendant from liability under the broad general rule that it owes no duty to trespassing children until they are discovered in a place of danger, a rule upon which the authorities are not in harmony, and which Judge Thompson in his work on Negligence, § 1809, designates as "cruel and draconic."

There is a marked difference between the announcement of a general rule and its application to the facts of a particular case, for often, with a change of circumstances, a general rule must undergo modification. Even conceding that, up to the point of discovery, the duty to all trespassers, whether young or old, is the same, back of that lies the question of duty to have seen, which may in law carry with it the responsibility, or civil law *imputatio*, of having seen.

As a general measure of safety for all, it is the duty of those operating trains to be watchful and guard against possible accidents of all kinds, without special reference to any particular persons or things, to observe environments, watch where they are going, and maintain such a lookout at all times as is reasonably required by the circumstances, "and which should be more careful where there is risk of access to the track

than where it is less likely." *Marcott* v. *Railway Co.*, 47 Mich. 1 (10 N. W. 53).

This accident occurred in a city, between two closely adjacent streets, at a point where citizens of all classes were accustomed and suffered to use the track as a thoroughfare, and where defendant's trainmen had reason to know and expect persons might be walking along the track at any time. In 23 Am. & Eng. Enc. Law (2d Ed.), p. 754, these general rules, as applied to such conditions, are deduced from many authorities there cited, including *Marcott* v. *Railway Co.* and *Battishill* v. *Humphreys, supra,* from our own court:

"Where there is reason to apprehend that the track may not be clear, as in the case of tracks running through cities or other populous districts where persons are in the habit of crossing or walking on the tracks, the persons operating the train cannot act on the presumption that the track is clear, and so fail to maintain a proper lookout, without making the company responsible for the consequences. Especially is this true, according to some authorities, where the trespassers are children, or where there is such a custom established on the part of the public of going upon the tracks, as to amount to a license. In such cases a failure to see is not alone sufficient to give rise to liability, but there must be a failure to see after the exercise of ordinary care."

*Vide,* also, 2 Thompson on Negligence, and vol. 8 (White's Supp.), § 1726, and cases cited. In volume 8, § 1725, relative to the duty of care as to persons using a railway track as a footpath, amongst other things it is said:

"And for the purpose of this rule it makes no difference that the railroad company has posted signboards warning people not to trespass on the right of way."

In *Montgomery* v. *Railway Co.*, 103 Mich. 46 (61 N. W. 543, 29 L. R. A. 287), this court quoted with

approval the following from *Hanlon* v. *Railway Co.*, 104 Mo. 389 (16 S. W. 233):

"This rule has, however, a qualification which is founded upon principles of humanity and is universally recognized. This qualification enjoins upon the railroad company the duty of using all reasonable efforts to avoid injury to one who has negligently placed himself in a position of danger, if the peril is known, or, under certain circumstances, by reasonable care might have been known."

Plaintiff's evidence here clearly tends to show that her peril might have been known to the trainmen in time to avoid the injury, had they but exercised the reasonable care, in the operation of their train, which their duties under the circumstances demanded.

In *Green* v. *Railway Co.*, 110 Mich. 648 (68 N. W. 988), a child about two years of age wandered from the premises of its grandmother to defendant's track, where it was killed by a freight train, which was being backed in the process of switching. The accident did not occur at or near any highway crossing, nor in a city or village, but upon or near a private way which crossed defendant's track, and which was daily used to the knowledge of defendant and its employees. So far as shown, the only duty of the railroad arose from knowledge of and acquiescence in such use of its track at that point. In affirming a judgment for plaintiff, this court said:

"To what extent this way was traveled, and consequently the degree of care required in the management of trains, were proper questions for the jury."

For the reasons given, we conclude that the questions of the extent to which defendant's track was traveled at the place of accident, defendant's knowledge of such use, the degree of care required in managing trains in that locality, as well as other possible

questions which might arise in that connection, should have been submitted to the jury under proper instructions.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.