NEWELL v. DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

1. RAILROADS—TRESPASSERS—WARNING—NEGLIGENCE.
    In an action for the death of plaintiff's decedent, who was killed while walking on a trestle or bridge on his way to work, by defendant's engine backing down upon him without a light, where the evidence showed that decedent disregarded the notices defendant had posted warning pedestrians to keep off, the court was not in error in directing a verdict for defendant on the ground that it had performed its duty to the public.

ON REHEARING.

2. SAME — TRESPASSERS — NAKED LICENSEE — NEGLIGENCE—GROSS NEGLIGENCE.
    Plaintiff's decedent being no more than a mere naked licensee, no obligation was imposed on defendant other than not to

do him wilful injury; and plaintiff's danger, not having been discovered, the doctrine of gross negligence does not apply.

Error to Ottawa; Cross, J. Submitted April 21, 1915. (Docket No. 77.) Decided September 28, 1915. Reargued January 19, 1916. Former opinion affirmed March 31, 1916.

Case by Sarah Newell, administratrix of the estate of David Newell, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company for the unlawful killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Louis H. Osterhous,* for appellant.

*Harrison Geer* (*W. K. Williams,* of counsel), for appellee.

KUHN, J. This is an action brought by the plaintiff to recover damages for the death of one David Newell, who was run down and instantly killed by one of the defendant's locomotives at 6:15 a. m., central standard time, January 14, 1914, while it was still dark.

The defendant owns and operates a line of railway running from the city of Grand Haven northerly and eastwardly through Ferrysburg, which is a village of some 300 or 400 inhabitants, to Detroit, and the property includes a strip of track between a railroad trestle over the south channel of the Grand river and a swing bridge over the main channel of the Grand river between Grand Haven and Ferrysburg station. The right of way at this point consists of an embankment built up to a height of from 8 to 12 feet above the ordinary ground level on each side, and is occupied by two straight parallel tracks. The west track is the main line of the defendant railway company; the east

track is the main line of the Pere Marquette Railroad Company, which company was using the same at the time in question under a lease from the defendant. The distance from the bridge to the trestle is 1,455 feet, and the trestle itself is 650 feet in length; there being two separate trestles, one for the east track and one for the west track, separated by an open space of about 5 feet. The tracks from the swing bridge south up to the Pere Marquette cross-over beyond the trestle were maintained and looked after by the section crew of the defendant company, and not by any employees of the Pere Marquette Railroad Company. Mr. Newell was a member of the Grand Haven section crew of the Pere Marquette Railroad Company, and his section commenced about 600 feet south of the trestle and extended in a southerly direction. The defendant maintained on the bridge a sign which read as follows:

"*Warning: No Thoroughfare.*—No persons allowed on this bridge except employees"

—and also had similar signs at both ends of the trestle.

Plaintiff's decedent, who resided at Ferrysburg, was accustomed to report for work every morning at the Grand Haven depot at 6:25 a. m., and it was his habit and custom to go to his work upon and along the railroad track from his home in Ferrysburg, which made the distance shorter than if he had traveled along the public highway. On the morning in question he left his home between 6 and 6:15, and met his partner, a Mr. Lulofs, and they started for Grand Haven about 6:10. This was the last seen of Mr. Newell alive, and he and his fellow workman, Mr. Lulofs, were run down and killed by a locomotive of the defendant company, which was backing down the track without a headlight on its tender.

It was the theory of the plaintiff that the defendant, in operating its engine in this manner, under the circumstances and at the time and place in question, dis-

regarded its duty to any person who might have been walking along the tracks, and particularly to the plaintiff's intestate, in the following respects:

(1) In not keeping any reasonable, proper, and necessary watch and lookout for pedestrians along the track.

(2) In not having and keeping upon the engine tender a suitable, sufficient, and necessary headlight, which would serve as a warning to pedestrians on the track, and by the light of which the engine crew could have seen such pedestrians.

(3) In not keeping a watch and lookout from and on the footboard on the rear of the engine.

(4) In not blowing the whistle, or sounding any signal or warning whatever, that could have been heard by any pedestrians on the track, and also that the injury complained of is claimed to have been inflicted "wilfully, recklessly, carelessly, negligently, and wantonly."

At the close of the proofs in the case counsel for defendant moved the court to direct a verdict of no cause of action for the following reasons:

(1) Because the plaintiff's intestate was a trespasser, to whom the defendant at the time and place in question owed no duty, other than to do him no wilful or wanton injury.

(2) Because the defendant had not been guilty of any wilful or wanton injury.

(3) Because plaintiff's intestate was guilty of contributory negligence.

The trial court directed a verdict for the defendant on the ground that the defendant, having put up signs warning people to keep off the track, had done its full duty to the public, being of the opinion that the case presented was ruled by the decision of this court in *Winnie* v. *Railroad Co.,* 160 Mich. 334 (125 N. W. 351).

It is the claim of the plaintiff—and testimony was offered to sustain this claim— that the right of way in question had for years been used by the public as a

thoroughfare, and that therefore plaintiff's decedent was a licensee, and not a trespasser, upon the railroad right of way and tracks at the time he was killed. Counsel for appellant, in a well-prepared brief, has gone over all the authorities in the various jurisdictions upon this question, and concedes the rule that ordinarily a railway company owes no greater duty to a trespasser upon its track than to use reasonable care not to injure him after his peril has been discovered, and that the company need exercise no lookout, nor maintain any crew or watchman, to discover him, but contends that this rule should not apply to a situation where people are accustomed to travel on the railroad tracks and this public use is known to the railroad company. In discussing the case of *Winnie* v. *Railroad Co.*, *supra*, counsel says that it should be distinguished, but does not indicate in what way it can be distinguished. He further says that the decision is contrary to all other authorities in the State, and has been in effect overruled by the decision in *Huggett* v. *Erb*, 182 Mich. 524 (148 N. W. 805).

It is true that an examination of all the authorities discloses that there is considerable conflict in the various jurisdictions over the duty railroad companies owe to trespassers on their tracks. But in our opinion the situation here presented is clearly ruled in this State by the decision in the *Winnie Case*, *supra*, which we think cannot be distinguished in principle. This court in that case said:

"It is difficult to conceive what more this company could have done to give warning to the general public that this was a place of danger. The evidence tended to show that a fence had been maintained which had been torn down from time to time. The yard was very plainly devoted to railroad tracks, in which cars and engines were frequently moving back and forth and were of themselves a warning of danger, and, with the notices posted as they were, the public who saw fit to pass over these tracks did so with full knowl-

edge of the danger. Except by stationing men at the highway along the track, it is impossible to conceive how the company could have more effectively warned the public that this territory was not a thoroughfare. The case upon this point is very similar to that of *Perego* v. *Railway Co.*, 158 Mich. 225 (122 N. W. 535)."

We see no reason why the conclusion therein reached should be now overruled, as we are of the opinion that that conclusion should result, not only in the protection of property, but, what is far more important, the preservation of personal security and human life.

The right of way was the exclusive property of the defendant, upon which no unauthorized person had the right to be for any purpose. Plaintiff's decedent in this case was not upon the right of way by any invitation of the defendant, express or implied. He was there, knowing of the defendant's wish that he should not walk along this right of way at the point in question; defendant having for years maintained signs forbidding people doing what the decedent did. He was not there to transact any business whatever for the defendant, and in our opinion, as was said in the *Winnie Case, supra,* the railroad company did all that it should be called upon to do in warning the public of the fact that the right of way was not a thoroughfare. A court should not say to wilful trespassers of mature years, after they have been warned, that if they go upon a railroad track in case it suits their convenience the railroad company is obliged to protect them further than to avoid doing them injury after their peril is discovered.

We think that this case is readily distinguishable from *Huggett* v. *Erb, supra,* where a child of 2 years and 8 months of age was run over in the city of Alma at about 1:40 o'clock in the afternoon, while walking down the track of the defendant within the limits of that city and between two public crossings.

We think the distinction can be readily drawn from the following language used by Mr. Justice STEERE in writing that opinion:

"Conceding that children *non sui juris,* invading private property, are technical but unconscious trespassers, as would be a wandering animal, the view is sustained by these cases and abundance of other authority that they are not wilful trespassers, knowingly doing a wrong or incurring a risk in a sense which could legally charge them with negligence or personal responsibility, as in the case of older persons not under such disability."

In the instant case we have a man of mature years, in the full possession of all his faculties, and not a child of tender years, incapable of "knowingly doing a wrong or incurring a risk in a sense which could legally charge them with negligence or personal responsibility." There is no escape from the conclusion that under the authorities in this State, under the facts set forth in this record, plaintiff's decedent was a wilful trespasser, and that therefore the circuit judge was correct in holding that there was no liability on the part of the defendant, and in directing a verdict in its favor.

Judgment is affirmed.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This is a case originally assigned to the late Justice MCALVAY, remaining undetermined at the time of his death.

### ON REHEARING.

KUHN, J. The argument on the rehearing granted in this case was had in conjunction with a rehearing granted in *Risbridger* v. *Railroad Co.,*[1] opinion appearing in 152 N. W. 961. After a careful review of the elaborate briefs submitted by counsel, and a full con-

---

[1] Publication withheld pending rehearing.

sideration of the arguments had at the hearing, we have been unable to come to any other conclusion but the one arrived at in the opinion heretofore written. In our opinion, the facts in this case clearly bring the situation within the rule announced in *Sturgis* v. *Railway Co.*, 72 Mich. 619 (40 N. W. 914) ; *Clark* v. *Railroad Co.*, 113 Mich. 24 (71 N. W. 327, 67 Am. St. Rep. 442) ; *Winnie* v. *Railway Co.*, 160 Mich. 334 (125 N. W. 351).

It is the contention of counsel that this conclusion is at variance with the opinion of this court in *Morrison* v. *Carpenter*, 179 Mich. 207, 214 (146 N. W. 106, Am. & Eng. Ann. Cas. 1915D, 319). But we think that that case is readily distinguishable from the case now under consideration. For there the court said that if a licensee uses a well-defined, openly, and continuously used way, he takes only such risks as have existed during the time of using the same. But this does not extend to additional risks on the path made afterwards by the licensor without the knowledge of the licensee. And it was said that if the licensor interfered with the path by making it more dangerous, he should give notice to the licensee or guard the dangerous place so made.

In the instant case there is no question but that the path used by the plaintiff's decedent at the time he met his death was in the same condition that it had been in, and that he was not confronted with unusual danger at that time. As we have before said, the plaintiff's decedent was upon the track without any invitation, express or implied, and the most that can be said is that he was there by tacit permission only. The plaintiff's decedent, walking longitudinally along the track, was in a place of known danger. The use he was making of the track was simply by sufferance, which amounted to no more than a mere naked license, and imposed no obligation on the railroad company to pro-

vide against the danger of accident other than not to do him wilful injury.

The distinction between the situation in this case and the case of *Huggett* v. *Erb,* 182 Mich. 524 (148 N. W. 805), was commented on by this court in the case of *Hoover* v. *Railway Co.,*[1] 154 N. W. 94, where Mr. Justice STEERE, in speaking for the court, said, in referring to the *Huggett Case:*

"The latter case lays down no new doctrine and changes no previous rule, but, as applied to the case then under consideration, reiterates and points out the distinction, relating to trespass, involving danger of injury, between infants *non sui juris* and adults or those of sufficient age to realize the nature of their conduct, care for themselves, and be accountable for their acts."

It is also urged that under the facts shown in this record the case should have been submitted to the jury on the theory of the defendant being guilty of gross negligence. It will be unnecessary to determine whether or not a railroad company might not be guilty of gross negligence, as it has been held in many jurisdictions, in operating a train, even over its private right of way, at a high and dangerous rate of speed, unlighted, and without proper warning signals, in a densely populated community, over tracks known by the company to have been frequented by pedestrians. In the instant case no such situation confronts us, for the place where decedent met his death was not such a place, but on the contrary was away from the populated areas. We do not think that the doctrine of gross negligence could be said to apply to such a situation, unless the peril of the deceased had been discovered. See *Strong* v. *Railroad Co.,* 156 Mich. 66 (120 N. W. 683) ; *Knickerbocker* v. *Railway Co.,* 167 Mich. 596 (133 N. W. 504) ;

[1] Decided September 29, 1915.
187 Mich.—45.

*Putt* v. *Railway Co.,* 171 Mich. 216 (137 N. W. 132);
*Fike* v. *Railroad Co.,* 174 Mich. 167 (140 N. W. 592).

Being constrained to come to the same conclusion we reached before, judgment is affirmed.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.