LINDSTROM *v.* DULUTH, SOUTH SHORE & ATLANTIC RAILWAY CO.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—TRESPASSING FISHERMAN ON BRIDGE IN NIGHTTIME.

Evidence *held,* sufficient to establish that plaintiff, a trespasser, was guilty of contributory negligence as a matter of law in action for personal injuries sustained when struck by defendant's railroad train while he sat on a guard rail at about the center of defendant's 175-foot private railroad bridge fishing in a shallow river about two o'clock on a clear night, did not look to see whether or not a train was coming nor get to place of refuge provided at intervals of 15 feet on the bridge.

2. SAME—DUTY AS TO TRESPASSERS.

Railroad has no duty to maintain a look-out for or warn adult trespassers on its privately used bridge in the nighttime.

3. NEGLIGENCE—LAST CLEAR CHANCE.

> The doctrine of last clear chance does not apply where there is no duty to see or maintain a watch for plaintiff unless his peril is actually discovered.

Appeal from Gogebic; Driscoll (George O.), J. Submitted April 10, 1934. (Docket No. 79, Calendar No. 36,673.) Decided June 4, 1934.

Case by Einard Lindstrom against Duluth, South Shore & Atlantic Railway Company for personal injuries alleged to be due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Reversed.

*Frank E. Hook* and *Alvin L. Rummel,* for plaintiff.

*Belmont Waples* (*A. E. Miller,* of counsel), for defendant.

EDWARD M. SHARPE, J.   July 5, 1930, at about 2 a. m., the plaintiff, a young man about 22 years of age, was fishing on defendant's railroad bridge when he was struck and severely injured by defendant's train and thrown into the water below.

The bridge on which plaintiff was injured spans the west branch of the Ontonagon river about one mile east of Bergland, Michigan. About 700 or 800 feet northeast of the bridge is a dam, the water running over which makes much noise. Defendant's regular eastbound passenger train No. 8, running from Duluth to Marquette, left Bergland at 2 a. m., July 5, 1930, on time and got to the bridge at 2:04 or 2:05 a. m. The track is straight and level for more than half a mile west of the bridge and for two miles east of it. The locomotive was equipped with an electric headlight which would illuminate

the track ahead on a clear night for a distance of 700 to 900 feet. The train was proceeding slowly at about 25 miles an hour because of a fill being constructed just east of the bridge. At that speed the train could be stopped in about 300 feet. The automatic bell was set ringing and the whistle blown before the train reached the bridge on account of a highway crossing east of the bridge.

The bridge is about 175 feet long. No person could remain safely on the surface of the bridge while a train passed, but there are projecting caps or timbers 15 feet apart at the side of the bridge and below the level of the rails, large enough for a person to stand or sit on while a train passed. These caps were so used by trainmen and also by fishermen.

Plaintiff was sitting on the guard rail (a heavy plank across the end of the ties) on the north side of the bridge, facing north, and about in the middle of the bridge. The river at that point has a depth of about four feet. Plaintiff could swim. Prior to this time many people had used the bridge for fishing purposes although no one was ever known to fish from this bridge at night. The engineer and fireman on defendant's train testified that they saw no one on the bridge that night and did not know of the accident until months later.

Plaintiff claims that defendant's enginemen were guilty of negligence in not discovering the peril of plaintiff and in not appreciating that plaintiff was ignorant of his danger and stopping the train before reaching him. Defendant claims that the bridge was constructed and maintained by it exclusively for its own purposes; that the plaintiff was guilty of contributory negligence and did not exercise due care and caution for his own safety in placing himself

and remaining in a position of such obvious danger to the time of the collision; that it did not know of or even suspect the presence of plaintiff on the bridge; and denies that in the exercise of due care it could have discovered plaintiff's position of peril in time to have avoided colliding with him. Defendant also claims that plaintiff was a trespasser and that it owed him no duty to maintain a look-out for his safety.

The case was tried before a jury and a verdict found for plaintiff in the sum of $2,500. Defendant appeals.

Defendant complains of the following portions of the court's charge to the jury:

"So that even though the plaintiff was negligent in going upon this bridge and there engaging in fishing, if the defendant's engine crew discovered him fishing there, and if the plaintiff was unaware of the approach of the train and the engine crew knew, or in the exercise of ordinary care could and should have known, that plaintiff was unaware of the approach of the train, in sufficient time before the accident to have enabled the engine crew by the exercise of ordinary care and the use of the means at hand, to have avoided the injury, then it would be the duty of the engine crew to have done so, and the failure on their part to have done so would be sufficient basis for a recovery on the part of the plaintiff, even though he himself negligently placed himself in this position of peril. * * *

"In order to entitle plaintiff to recover in this case he must show by a preponderance of the evidence each and all of these four propositions: First, that the defendant's engine crew saw, or, in the exercise of ordinary care, could and should have seen him on the bridge; second, that plaintiff was actually unaware of the approach of the train which struck him until it was too late for him to escape being hit

by the train, by the exercise of ordinary care on his part; third, that the defendant's train crew knew, or in the exercise of ordinary care could and should have known, of plaintiff's ignorance of the approach of the train; and fourth, that the defendant's engine crew discovered, or in the exercise of ordinary care, could and should have discovered plaintiff's presence on the bridge, and plaintiff's ignorance of the approach of the train, in sufficient time, before the plaintiff was struck by the train, so that by the exercise of ordinary care and the use of the means at hand, the engine crew could have avoided plaintiff's injury by giving him warning of the train's approach, slackened the speed of the train, or stopped the train.

"If the plaintiff has proven each and every one of these propositions by a preponderance of the evidence, then he is entitled to recover, otherwise your verdict should be for the defendant.    *    *    *

"Whether or not, if the train crew saw or should have seen plaintiff on the bridge and plaintiff was unaware of the approach of the train as claimed by him, the engine crew could and should have discovered his want of knowledge of the approach of the train in sufficient time to have avoided his injury in the manner claimed by plaintiff, is a question of fact for you to determine from all of the evidence in the case."

That the plaintiff was guilty of contributory negligence is evidenced from his own testimony. The plaintiff testified:

"I knew perfectly well when I went on to that bridge that time that it was a place of danger and I knew that if a train came along when I was about the middle or center of that bridge that I was in serious danger of being hurt. On this occasion I was in about the center of the bridge and I did not know that a train was coming. I didn't look to see

whether a train was coming. I just sat there on the guard rail fishing at the time. I did not have any blanket or shawl over my head at the time, so that if I had turned to the right or left and looked up or down the track I would have seen the train if it was coming. It wasn't foggy that night, there was no fog at all. It was a clear and starlight night; I don't remember whether the moon was shining. I had been there only a few minutes fishing when this accident occurred and during those few minutes I paid no attention to anything except fishing. I was looking out, watching my line and watching the water and my mind was intent on the fishing, I was anxious to catch some fish. I did not catch any fish in those few minutes. I was waiting anxiously for the fish to bite. My mind was on the fishing but I tried to take care of the possibility of a train coming too. During that 15 minutes I don't remember if I looked up or down the track at all."

Plaintiff was a trespasser at the place and time he was injured and there is no evidence that his peril was discovered by the operators of the train. In such cases the railroad has no duty to maintain a look-out for or warn trespassers on its tracks. *Trudell* v. *Railway Co.*, 126 Mich. 73 (53 L. R. A. 271); *Winnie* v. *Railway Co.*, 160 Mich. 334; *Newell* v. *Railway Co.*, 187 Mich. 697; *Risbridger* v. *Railroad Co.*, 188 Mich. 672; *Stankiewicz* v. *Railroad Co.*, 263 Mich. 267.

Where there is no duty to see or maintain a watch for plaintiff, the doctrine of last clear chance does not apply unless plaintiff's peril is actually discovered. *Newell* v. *Railway Co.*, *supra*.

Judgment reversed without a new trial. Costs to defendant.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.