BARNETT *v.* NEW YORK CENTRAL RAILROAD CO.

1. EVIDENCE—PRESUMPTIONS—EYEWITNESSES TO FATAL ACCIDENT.
   The presumption that a decedent was free from contributory negligence which exists where there are no eyewitnesses to a fatal accident does not arise when there are eyewitnesses.

2. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—RAILROAD CROSSING—ICY PAVEMENT—WARNINGS.
   Contributory negligence of a motorist, plaintiff's decedent, was one of law for the court and not one of fact for the jury where evidence shows that at 9 p. m. on an evening in January when the pavement was icy and slippery he drove at speed of 25 miles an hour and broke the crossing gate that had been lowered immediately in front of him by gateman in control tower a block away as decedent went onto defendant's railroad track where warning bell at crossing was ringing and locomotive's headlight was burning, bell ringing and whistle blowing as crossing was approached at speed of 12 miles an hour where collision occurred which resulted fatally to plaintiff's decedent and two of his passengers.

Appeal from Bay; McCormick (James L.), J. Submitted October 17, 1940. (Docket No. 97, Calendar No. 41,085.) Decided December 10, 1940.

Case by Reginald J. Barnett, administrator of the estate of Elmer Theaker, deceased, against New York Central Railroad Company for damages arising out of death of plaintiff's decedent. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*R. L. Crane,* for plaintiff.

*James K. Brooker* and *William A. Alfs (John J. Danhof,* of counsel), for defendant.

McAllister, J.   On January 7, 1936, about 9 p. m., Elmer Theaker, plaintiff's decedent, was driving his automobile north on Michigan avenue in the city of Saginaw and approaching the New York Central Railroad crossing at a rate of speed of approximately 25 miles per hour. Theaker was accompanied by two other persons who were passengers in the automobile. It was a stormy night and the street was slippery and icy. The crossing, which passes east and west across Michigan avenue, is protected by crossing gates controlled by a "target house" about a block away. There is a gate at each corner of the intersection; they are operated in pairs—the north pair of gates being raised or lowered simultaneously, and the same is the case with regard to the south pair of gates. As Theaker neared the gates, defendant's train, coming from a southwesterly direction at a speed of approximately 12 miles per hour, was also approaching the crossing. The headlight on the locomotive was lighted; the bell was ringing, and the whistle was blowing. The warning bell at the crossing was likewise ringing. Theaker drove his automobile onto the crossing, and there resulted a collision in which plaintiff's decedent and the two passengers in his automobile were killed. This action was brought to recover damages arising from defendant's alleged negligence. A verdict of no cause of action was directed by the trial court, upon which judgment was entered; and plaintiff appeals, claiming that the court erred in not submitting the question of plaintiff's contributory negligence to the jury, for the reason that there was a presumption of care on the part of plaintiff's decedent, there being no eyewitnesses to the accident. It is further claimed that the evidence presented a question of fact for the jury; and that the court erred in permitting intro-

duction of testimony of one of plaintiff's witnesses in a case, arising out of the same accident.

In personal injury cases resulting in death, a decedent is presumed to be free from contributory negligence, where there are no eyewitnesses to the accident, unless credible evidence shows the contrary. *Russo* v. *City of Grand Rapids,* 255 Mich. 474. But in the instant case several witnesses saw decedent approach the crossing and were eyewitnesses to the collision. In such a case the presumption does not arise.

Plaintiff's theory was that the north gates, situated at the far side of the crossing, were lowered first, while decedent was proceeding across the tracks; and that after being stopped by these gates, he was trapped on the track when the south gates afterward were lowered, thus preventing him from either going ahead or backing off the track. To sustain this claim, plaintiff relies upon the testimony of Grace Hildebrandt. While confusing on some points, Mrs. Hildebrandt's testimony appears to be clear on the vital question of plaintiff's contention and, instead of supporting, refutes it and shows that plaintiff's decedent must have crashed through the south gate before he was struck by the locomotive; and that, therefore, this gate did not go down behind him after he had stopped on the track. Witness Hildebrandt testified:

"Just as I stood there this car came along up to the railroad track, and he dropped the gates on the west side of the railroad track—on the north side of the railroad track from my house, and then it got right up to the track *and the other gate dropped right down in front of him too.* * * *

"*Q.* Was there any gate that was down before the gate at the northeast corner, the one he went against?

"*A.*   No, just as he came up there they dropped the other gate down on him.

"*Q.*   What do you mean?

"*A.*   They dropped the north gate down, and then they dropped the other gate on the south side of the railroad down *just as he came up there.*

"*Q.*   Well, I suppose what you mean that when he got up by the northeast gate, or right near to it, that after he got there one of the south gates dropped, is that what you mean?

"*A.*   Sure, the target man was putting the other gates down when he drove up to the tracks.

"*Q.*   When he came to the crossing were either of the south gates at the crossing down?

"*A.*   No, they were not, they were lowered while he was there.    *   *   *

"*The north gate was down and the other went down just as he drove up.*   *   *   *

"I am sure the gate on the south side dropped right down *in front of him.*"

She further testified that plaintiff's decedent was travelling about 25 miles an hour when she first saw his automobile at a point four car lengths distant from the track, and that she then thought that there was going to be an accident, "because it was so awful slippery."

Other witnesses testified that they observed decedent's car at a point 75 feet from the crossing; that he was travelling 25 miles per hour, and that he crashed through the south gate, which was down, and was thereafter struck by the locomotive and thrown against the post and traffic gate on the north. Eight witnesses testified that the south gate was broken; and the plaintiff's counsel states in his brief that "it was not broken save the lighter part of the board" and claims that "it is plain if the automobile was stopped by the north gate the south

gate would strike the rear of the automobile when that gate was lowered."

It is further claimed by plaintiff's counsel, in his brief, that "when he (decedent) reached the north gate it lowered when he was about three feet from it and that held his automobile from going north, and he could not back or go in different direction. * * * The south gate lowered while the automobile was standing and no doubt struck the rear part of the automobile and the light piece at the end of the gate flew up into the air."

There is no evidence, however, that the south gate struck the rear part of the automobile; and in view of the direct and uncontroverted testimony that the south gate was smashed by reason of decedent's driving through it, we are of the opinion that this contention is without merit.

The admitted speed of decedent's car; the icy, slippery condition of the street; and the overwhelming weight of evidence as to decedent's crashing through the south gate before the collision with the locomotive, made the question of his contributory negligence one of law for the court. This determination makes it unnecessary to discuss other claimed errors with respect to the improper admission of evidence.

Judgment affirmed, with costs to defendant.

Bushnell, C. J., and Sharpe, Boyles, Chandler, North, Wiest, and Butzel, JJ., concurred.