### MALLORY v. PITCAIRN.

1. AUTOMOBILES—RAILROADS—SPEED UPON APPROACH TO A CROSSING. Statute requiring a motorist to reduce speed to 10 miles an hour in approaching a railway crossing was repealed by the adoption of the uniform motor vehicle act (Comp. Laws 1929, § 4693 *et seq.,* as amended; § 11405).

2. RAILROADS—STATUTES—SURFACING OF CROSSING—FINDING OF COURT—PROXIMATE CAUSE—EVIDENCE.

    Finding of trial judge in nonjury case that condition of surfacing at railroad crossing, required by statute to be maintained by the railroad company in as durable and smooth a condition as that of the adjacent highway, was not hazardous to motor travel, was not in violation of statutory requirements, and was not a contributing cause of the accident is not disturbed under record showing plaintiff to have driven several hundred miles during the day and to have been traveling 40 to 50 miles an hour before skidding some 33 to 36 feet as he collided with freight car being switched on third track of grade crossing at 11:15 p.m. at speed of 5 or 6 miles an hour (2 Comp. Laws 1929, § 11402).

3. NEGLIGENCE—PRESUMPTION OF DUE CARE—LOSS OF MEMORY—EYEWITNESSES.

    The presumption of due care does not apply in favor of one who

A defendant must have ability to avoid harm to plaintiff in order to be held liable after discovering plaintiff has negligently placed himself in place of danger, see 2 Restatement, Torts, § 479 (c).

suffered loss of memory and had no recollection of the accident where there were eyewitnesses who gave positive testimony as to his negligence.

4. SAME—SUBSEQUENT NEGLIGENCE.

The doctrine of subsequent negligence on part of defendant may not be invoked by a plaintiff who is negligent himself until his own negligence has ceased as a proximate cause and defendant has discovered such negligence in time and with the ability to avoid the accident and failed to do so.

5. RAILROADS—AUTOMOBILES—SUBSEQUENT NEGLIGENCE.

Motorist, traveling at speed of 40 to 50 miles an hour at night, who approached railroad crossing on third track of which a freight car was being switched at speed of 5 or 6 miles an hour, cannot predicate claim upon theory of subsequent negligence where defendants' employee who did see plaintiff's car approach was in such a position that he was unable to signal the fireman or engineer to stop the short train.

6. SAME—AUTOMOBILES—NONJURY CASE—FINDING OF COURT—GREAT WEIGHT OF EVIDENCE.

In motorist's action against railroad company for damages arising from collision as defendant switched cars across street at night, finding of trial judge that defendant was not negligent and that plaintiff's negligence was the proximate cause of the accident in that he failed to exercise the care and caution required of one approaching a railroad crossing in the nighttime was not against the great weight of the evidence.

7. APPEAL AND ERROR—NONJURY CASE—EVIDENCE.

In cases tried without a jury the trial judge is best able to judge the credibility of, and the weight to be accorded, testimony of witnesses he saw and heard and the Supreme Court will not reverse unless the evidence clearly preponderates in the opposite direction.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 8, 1943. (Docket No. 14, Calendar No. 41,950.) Decided October 11, 1943.

Case by Wilhelm E. Mallory against Norman S. Pitcairn and Frank C. Nicodemus, Jr., receivers of the Wabash Railway Company, an Indiana corporation, for injuries sustained in an accident between his automobile and defendant's train. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Rosenburg, Painter & Navarre,* for plaintiff.

*Burke & Burke,* for defendant.

STARR, J. Plaintiff appeals from a judgment for defendants rendered by the trial court sitting without a jury.

This case involves plaintiff's claim for damages resulting from a collision between his automobile and a Wabash Railway Company train at the intersection of County street and the railway company's tracks in or near the village of Milan. Such accident occurred about 11:15 in the evening of November 2, 1938. County street runs east and west and was tarvia surfaced. There were four tracks of the railway company crossing such street in a northeast and southwest direction. Viewing the intersection from the west, the first and second tracks, which crossed County street at an angle of about 39 degrees, were referred to as main-line tracks. The third and fourth were sidings or spurs which branched off north of County street and, after crossing the street at angles of 47 or more degrees, ran to the front and rear of the Ideal Foundry, which was located south of the intersection.

Plaintiff, riding alone, was returning from a business trip through eastern states to his home in Ann Arbor and had driven several hundred miles that day. As he drove east on County street, he approached the railroad tracks at a speed variously estimated at from 40 to 50 miles an hour. His car was in good working condition; the night was clear; the roadway was dry; and he testified that "it was a good night for driving." As plaintiff approached the tracks, he had a clear and unobstructed view of the intersection and also of defendants' train as it approached and entered the intersection from the

north. There were overhead street lights on County street both east and west of the tracks, which illuminated the intersection.

Defendants' engine, with tender, was engaged in certain switching operations and, with three freight box cars attached, had stopped a short distance northeast of the intersection while a switch was being thrown to permit it to go onto the third track. The engine was headed northeast and, after the switch was thrown, proceeded to back the three box cars across the intersection at a speed of five or six miles an hour. The headlight on the engine pointed to the northeast; the light on the rear of the tender reflected against the box car coupled to it. As the train approached, its whistle was blown, and its bell was automatically kept ringing continuously while it approached and crossed the intersection. As the box car at the rear end of the train neared the intersection, the conductor caught on to the stirrup and ladder on the westerly side of such car and rode it into the intersection. He testified that he saw plaintiff's car approaching on County street about 400 feet from the tracks and that he signaled it to stop by waving his electric lantern back and forth. Plaintiff failed to stop or to slow down, and when his automobile was at or very near the first track, the conductor climbed the ladder on the side of the box car to avoid being caught in the impending collision. Plaintiff's car collided with the rear end of the box car on the south side of the intersection. The conductor testified:

"The body part of the car and the automobile came together first. The windshield hit the corner of this car, and the remainder of the radiator drove in under the draw bar, the coupling. * * * The car that I was riding on was derailed shortly after the accident. * * * After the impact with the

automobile, the car was off the track, the   *   *   *
rear trucks.''

Its appears that, as the train was on a curved spur
track, it was impossible for the conductor riding
on the westerly side of the rear box car to signal ei-
ther the fireman or the engineer. Immediately
after the collision the conductor jumped to the
ground and went to a point where he could signal
the engineer to stop. The engine had pushed the
box car, with plaintiff's automobile partially un-
derneath it, down the track for a distance of about
65 feet. The testimony shows that there were skid
marks made by plaintiff's car beginning at or a'
short distance west of the first track and extending
33 to 36 feet to the point of collision.

Plaintiff sustained severe and permanent inju-
ries, and at the time of trial, nearly two years after
the accident, he was unable to be present in court,
and his testimony was taken at his home. As a re-
sult of his injuries, plaintiff had no recollection of
the facts and circumstances immediately surround-
ing the accident. His last recollection preceding
the accident was when he turned on to County street
in the village of Milan.

At the conclusion of plaintiff's proofs, defend-
ants moved for a judgment in their favor. Such
motion was denied, and defendants proceeded with
their proofs. In his opinion the trial judge deter-
mined that defendants were free from negligence;
that plaintiff's negligence was the proximate cause
of the accident; and that he was not entitled to re-
cover under the theory of defendants' subsequent
negligence. Plaintiff's motion for a new trial was
denied, and he appeals.

Defendants' contention, that Act No. 270, § 4,
Pub. Acts 1921 (2 Comp. Laws 1929, § 11405 [Stat.
Ann. § 22.764]), required plaintiff to reduce his

speed to 10 miles an hour in approaching the railway crossing, is without foundation, as we held in *Fisher* v. *Railroad Co.,* 306 Mich. 95, that said statute was repealed by the adoption of the uniform motor vehicle act, being Act No. 318, Pub. Acts 1927 (1 Comp. Laws 1929, § 4693 *et seq.,* as amended [Comp. Laws Supp. 1935, § 4697 *et seq.,* Stat. Ann. § 9.1561 *et seq.*]).

Plaintiff contends that defendants were guilty of negligence in failing to maintain that, part of County street within the railroad crossing in the condition required by Act No. 270, § 1, Pub. Acts 1921 (2 Comp. Laws 1929, § 11402), as amended by Act No. 336, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 11402 [Stat. Ann. § 22.761]). Such statute requires the railroad company to maintain, renew, and repair the surfacing lying between the rails "with a material which shall be as durable as the adjacent highway surfacing, * * * and * * * in a condition as smooth as that of the adjacent highway." The testimony indicates that the surfacing between and adjoining the rails at the crossing was broken in places and was rough and uneven. Plaintiff argues, in effect, that such uneven surfacing lessened his control of his car through use of the brakes. From our study of the record we are inclined to agree with the trial court who found that the condition of the crossing was not hazardous to motor travel, was not in violation of the above-mentioned statute, and was not a contributing cause of the accident.

Plaintiff further contends that, as he suffered a loss of memory and had no recollection of the accident, he is entitled to. the benefit of a presumption that he exercised due care. *Breker* v. *Rosema,* 301 Mich. 685 (141 A. L. R. 867). However, there were eye witnesses to the accident who gave positive tes-

timony as to plaintiff's negligence, and when such testimony appeared, the presumption of due care disappeared. *Heckler* v. *Laing,* 300 Mich. 139; *Barnett* v. *Railroad Co.,* 295 Mich. 536; *Peck* v. *Hampel,* 293 Mich. 252; *Essmeister* v. *Roadway Transit Co.,* 275 Mich. 387.

Plaintiff next contends that defendants were guilty of subsequent negligence entitling him to recover. Under such contention he argues that defendants' train employees, upon becoming aware of his perilous position in approaching the tracks, failed in their duty to avoid the accident by stopping the train. Such argument overlooks the rule that plaintiff's negligence must have ceased as a proximate cause and that defendants must have discovered such negligence in time and with the ability to avoid the accident and have failed to do so. See *Sloan* v. *Ambrose,* 300 Mich. 188; *Gallagher* v. *Walter,* 299 Mich. 69; *Wells* v. *Oliver,* 283 Mich. 168.

In the present case plaintiff's negligence did not cease or come to rest but continued to the time of the collision. Furthermore, seeing plaintiff approaching several hundred feet away, defendants' train employees could reasonably assume that he would slow down or bring his car to a stop in time to avoid an accident. They did not discover that he was in peril until he was near the crossing and continuing at a high speed. The testimony does not establish that, after discovering plaintiff's peril, defendants' employees had the time or ability to stop the train and avoid the collision. Under the facts shown by the record, plaintiff cannot predicate a claim upon the theory of subsequent negligence.

We agree with the trial court that the testimony failed to establish negligence on the part of defendants. Furthermore, the testimony so conclusively establishes plaintiff's negligence as the proximate

cause of the accident, that it is unnecessary to discuss such testimony in detail. He failed to exercise the care and caution required of one approaching a railroad crossing in the nighttime. See *Gaffka* v. *Railroad Co.*, 301 Mich. 383; *Lockett* v. *Railroad Co.*, 272 Mich. 219; *Gardinear* v. *Railway Co.*, 265 Mich. 286; *Heintzelman* v. *Railroad Co.*, 260 Mich. 688.

The trial court saw and heard the witnesses and, as trier of the facts, was best able to judge the credibility of, and the weight to be accorded, their testimony. We have repeatedly said that in cases tried without a jury the trial judge may give such weight to the testimony as in his opinion it is entitled to, and that in such cases we do not reverse unless the evidence clearly preponderates in the opposite direction. *Hazen* v. *Rockefeller*, 303 Mich. 536; *Hanson* v. *Economical Cunningham Drug Stores, Inc.*, 299 Mich. 434.

In the present case there was ample testimony supporting the findings of the trial judge, and we are not disposed to interfere with his determination. The judgment was not against the great weight of the evidence.

The judgment for defendants is affirmed, with costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.