CARLSON v. GRAND TRUNK WESTERN RAILROAD CO.

1. APPEAL AND ERROR—DIRECTED VERDICT—ERRONEOUS REASON BY
CIRCUIT JUDGE.
The fact that the circuit judge gave a wrong reason for direct-
ing a verdict does not control if the right result was reached.

2. AUTOMOBILES—RAILROAD CROSSING—CONTRIBUTORY NEGLIGENCE—
OPPORTUNITY TO GET OUT OF DANGER.
In action for personal injuries received when plaintiff driver's
car was stopped on second track of 5-track railroad crossing
in front of defendant's train because of stopping of preceding
car, where evidence shows that his five passengers had time
to get out of car and to place of safety and that plaintiff,
41 years old and able-bodied, failed to do so, he was guilty
of contributory negligence as a matter of law.

3. SAME—RAILROADS—CONTRIBUTORY NEGLIGENCE—OPPORTUNITY TO
GET OUT OF DANGER.
A motorist whose car is stopped on railroad tracks and who has
ample opportunity to escape personal injuries by removing
himself to place of safety but fails to do so is guilty of
contributory negligence as a matter of law.

4. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — SUBSEQUENT NEGLI-
GENCE—PLEADING—ISSUES.
In action by motorist against railroad company for personal
injuries received when car, stopped by preceding traffic, was
struck by freight train, where plaintiff planted his case on
negligence of defendant without any negligence on his part,
subsequent negligence of defendant was not in issue.

5. RAILROADS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—FAILURE
TO REMOVE CAR OFF TRACKS.
In motorist's action to recover for personal injuries and dam-
ages to his car which he stopped before dawn on a winter
morning on railroad track in front of defendant's oncoming
train as he followed other cars which had stopped in front of
him, where it appears his motor was left running but there
is no proof he could not have backed his car up, out of the
place of danger, his contributory negligence barred any re-
covery.

Functions of court and jury in determining contributory negli-
gence, see 2 Restatement, Torts, § 476.

Appeal from Wayne; Murphy (George B.), J. Submitted January 11, 1944. (Docket No. 15, Calendar No. 42,553.) Decided April 4, 1944.

Case of Gustaf W. Carlson against Grand Trunk Western Railroad Company for damages sustained when his automobile was struck by defendant's train. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Carl R. Thomsen* and *Howard L. Ellis,* for plaintiff.

*H. V. Spike, William W. Macpherson* and *Forbes B. Henderson,* for defendant.

BOYLES, J. Plaintiff sued to recover damages for personal injuries and for damages to his automobile struck by one of defendant's freight trains. On trial by jury, at the close of the proofs the court directed a verdict for defendant, and plaintiff appeals from the judgment entered thereon.

The accident happened before daybreak on the morning of January 25, 1941, at the crossing of defendant's tracks with Caniff avenue, Hamtramck. Plaintiff was driving his automobile on Caniff avenue and transporting five other men to work at a motor company plant. At the crossing in question there are five railroad tracks. Plaintiff was driving east on Caniff, the traffic was heavy both ways, and plaintiff was following two other automobiles. As plaintiff approached the tracks he stopped, a freight train was passing over the crossing on a northbound track, in a northerly direction. After the northbound freight had passed, the automobiles ahead of plaintiff began to move forward and plaintiff followed. The automobile immediately ahead of plain-

tiff after crossing two of the railroad tracks stopped, compelling plaintiff to stop, with his rear wheels about on the easterly rail of the second railroad track, on which a southbound freight train was approaching. Two of the other men with plaintiff were in the front seat and three of his passengers were in the rear seat. The engineer of the southbound freight started blowing his whistle for the crossing when about a quarter of a mile from the crossing, his bell was ringing, his headlights on. Mr. Grosso, the passenger who was sitting on the right of the three men in the rear seat of the automobile (this was on the side farthest from the direction of the approaching freight), testified:

"The automobile stood on the tracks about 12 or 13 seconds when I first heard the whistle of the train. We all sat in this automobile for 12 or 13 seconds, and at the end of that time I heard the whistle of a train and it was then that I started to get out of the car. When I heard the whistle of the train I said, 'Let's get out,' and I started out. I used my elbow, pushed down, and opened the car door. I got out of the car and ran east. I did not go all the way across the tracks, just a little bit right under that watch tower, right in line with it. I went east about 40 or 45 feet from where the car stood. I did not see either Mr. Fitzgerald or Mr. Barker or Mr. Hicks or Wilson while I stood there. I don't know where they went. I did not see the train hit the automobile. I was running, with my back turned towards the car."

Mr. Wilson, who was sitting in the middle of the rear seat, testified:

"The northbound train went on, and traffic started. We followed it on across. Traffic stopped again and I raised up and a car sitting in front of us stopped, and about that time the train whistle

commenced blowing and I looked around and Joe (Mr. Grosso) was getting out of the car. I followed him right on out. * * * When I heard the whistle I looked over my shoulder and saw the headlights. I do not know how far the headlight was away then, I couldn't say, just flashed in my face and I knew we were on the tracks and I began to get out. I did get out, and was on the west side on the ground when the collision occurred. As to how far I was away from the car, well, across one of the tracks it was setting on and one switch track there behind the car."

Mr. Hicks, who was sitting at the left in the rear seat, testified:

"Just a second or so before the whistle blew, I saw the train coming. Mr. Carlson had to stop because the other car stopped ahead of him. His motor was running. The automobile that I was in had come to a stop about 20 seconds when I saw the headlight of the train coming. After I saw the headlight I would say about 10 seconds elapsed before the train hit the Carlson automobile. I would say I run about 15 feet, approximately that. I had stopped running and had just begun to turn around, when the collision took place."

Mr. Barker, the passenger who was sitting on the right side in the front seat, testified:

"According to my observation the auto stood stopped about 20 seconds on the track. The whistle first attracted my attention to the train. After the whistle I looked north and saw the light, and heard the whistle at the same time. I saw the light bearing down on us. I then got out of the auto and went east, same way Mr. Grosso went."

Mr. Fitzgerald, who was sitting in the middle of the front seat, testified:

"The car remained on the tracks about 18 or 20 seconds, before I made any movement in the car. That's from the time the car came to a stop on the railroad tracks, before I made any movement. The next that I know, I didn't hear the whistle because I had no hearing aid with me, but the first thing I noticed was Mr. Barker glancing over his shoulder past me, and then started to reach for the door. When he did that I knew that something must be wrong, so I glanced over my shoulder. All that I could see was that big headlight bearing down on us, so I wasn't very long following him out of the car. He had opened the door at that time. I didn't even have to open the door. I followed him out as quick as I could. I went straight east. I stopped probably 10 feet in front of the car.   *   *   *   I am somewhat deaf. I am wearing an Acousticon, they call it. I was, to a certain extent suffering from deafness on January 25, 1941, when this accident happened. I did not have that acoustic instrument on at that time. I imagine that was the reason I did not hear the whistle."

Plaintiff, who was sitting in the driver's seat, testified that he had followed the automobile in front of him at about 10 or 12 feet, that it stopped, and he (plaintiff) stopped behind it with his rear wheels about on the east rail of a southbound track. His window was open, his motor was not stalled, it was in low gear, he was "kind of excited," he did not attempt to move his automobile. He heard the whistle of the approaching freight, then he saw the light, and as to his own action testified as follows:

"I started to open the door, then I had the door open and started to get out. I just remember that I had my foot out, just started out, had my foot starting to get out, that's all I remember. I was hit. I had the door open and I was just starting to get out,

and had my foot, just moving my foot to get down, and that's all I remember."

The other five men had time to get out of the automobile and reach a place of safety before the automobile was struck by the freight train. One of them was 40 feet distant when the crash occurred. Even the two men sitting in the middle of the seats had time to follow others out of the car and reach a place of safety. Plaintiff was a strong, able-bodied man, 41 years old, his hearing and eyesight good, he had always led an active life. He had ample warning of the approach of the freight, and as full opportunity to avoid injury as the others in the automobile. The record is barren of any adequate reason why he failed to do so.

The record leaves considerable doubt as to whether the defendant's employees were guilty of negligence in the operation of the freight train. The trial court directed the jury to return a verdict of no cause for action on the ground that the testimony did not prove the defendant guilty of negligence. The court also held that the plaintiff was guilty of contributory negligence. The fact that the circuit judge gave a wrong reason for directing a verdict does not control if the right result was reached. We need not recount the facts relied on by plaintiff to establish defendant's negligence. Assuming for the purpose of this opinion that defendant's negligence was established as an issue of fact for the jury, we hold that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff had ample time and opportunity to avoid injury to his person. The instant case is controlled by *Goldman* v. *Railway Co.*, 287 Mich. 289, where the facts were almost identical with the case at bar and the accident occurred at this same crossing. See, also, *Krouse* v. *Railway Co.*, 215 Mich. 139, where plaintiff sought damages

under somewhat similar circumstances and the court said:

"If plaintiff's decedent could have escaped injury by the exercise of ordinary care and she failed to do so then her own negligence was the proximate cause of the accident and there can be no recovery. If plaintiff's decedent's want of ordinary care was in whole or in part a proximate cause of her injury thére can be no recovery. *Williams* v. *Edmunds,* 75 Mich. 92. There was ample opportunity after the automobile stalled upon the track for the deceased, in the exercise of reasonable prudence, to step to a place of safety. She was possessed of all of her faculties and no reason is shown for her delay in responding to the request of her husband to leave the automobile."

There is no occasion to apply the doctrine of subsequent negligence in the instant case. The record is clear that the engineer of the freight train did everything possible to avoid the accident when he discovered, or by the exercise of reasonable care should have discovered, the rear wheels of plaintiff's automobile on his east rail. There was traffic both ways on Caniff avenue. Westbound traffic interfered with the engineer's vision of plaintiff's automobile and when the engineer first saw that plaintiff's car was not in motion his engine was 250 to 300 feet distant from the crossing, he applied his emergency brakes, and did all that could be done to stop. The momentum of the heavy freight train carried the engine about 400 feet across Caniff avenue.

"Plaintiff planted her case on the negligence of defendant without any negligence on her part, and the doctrine of subsequent negligence was not an issue. See *Kerns* v. *Lewis,* 246 Mich. 423." *Kraft* v. *Railway Co.,* 262 Mich. 494.

See, also, *Mallory* v. *Pitcairn,* 307 Mich. 40; *Davidson* v. *City of Detroit,* 307 Mich. 420.

Plaintiff argues that he was entitled to go to the jury on the question of damages to his automobile ($246.50), relying on *Goldman* v. *Railway Co., supra.* In the *Goldman Case,* there were separate actions, by Belle Goldman, the driver of the automobile, for personal injuries, and by her husband for damages to the car owned by him. While Mrs. Goldman was denied recovery for personal injuries because of her contributory negligence, judgment for $400 for the husband for damages to his car was allowed on the ground that she had attempted to remove the stalled automobile from the railroad track with no proof that she was guilty of contributory negligence in failing to do so. The court said (p. 297):

"Nor is there any testimony of lack of effort to remove the automobile from its place of danger. In this particular Mrs. Goldman did all she possibly could. While it was within her power to have removed her person to a place of safety, she was wholly powerless to remove the automobile. If by the exercise of care she had saved herself from injury, nonetheless under the circumstances of this case it is evident that the automobile would have been damaged. It follows that Mrs. Goldman was not guilty of any contributory negligence in not getting the automobile off defendant's track before it was struck."

Such is not the case now before us. Plaintiff's automobile was not stalled, the motor was running, he made no attempt to remove it, there is no proof that plaintiff could not have backed his car up, out of the place of danger. His contributory negligence is a complete bar to any recovery.

Judgment affirmed, with costs to appellee.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.