SILANPA *v.* THOMSON.

1. RAILROADS — AUTOMOBILES — CONTRIBUTORY    NEGLIGENCE — UN-
GUARDED HIGHWAY CROSSINGS.

   In automobile passenger's action for personal injuries sustained
   near shut-down iron mine when car in which he was riding
   collided with first of three railroad flat cars being pushed
   across unguarded crossing of county highway without a flag-
   man being present or audible warning being given as required
   by city ordinance where it appears there were various obstruc-
   tions to view and there was similarity of coloration of cars
   and background on late November morning, question of
   whether plaintiff's driver was guilty of contributory negli-
   gence was a question for the jury.

2. SAME — NEGLIGENCE — CONTRIBUTORY    NEGLIGENCE — UNGUARDED
HIGHWAY CROSSINGS.

   The failure of a railroad to have a flagman to warn traffic at
   an unguarded highway crossing pursuant to city ordinance
   and its rule and custom would not excuse conduct attributable
   to plaintiff amounting to contributory negligence *per se* but
   some reliance may be placed upon guards or flagmen at high-
   way crossings by users of the highways.

3. DAMAGES—KNEE INJURY—LOSS OF EARNINGS.

   Verdict of $6,000 in favor of miner whose knee was broken in
   three places in collision between automobile and railroad flat
   car *held,* not excessive where knee is stiff, plaintiff has lost
   $2,400 in wages, later worked at 84 cents a day less, had a
   hospital bill of $93.65, a doctor bill of $150, and had suffered
   pain and inconvenience.

Appeal from Gogebic; Landers (Thomas J.), J.
Submitted June 15, 1944. (Docket No. 34, Calendar
No. 42,590.)  Decided September 11, 1944.

Case by Valentine Silanpa against Charles M. Thomson, trustee of the property of the Chicago & North Western Railway Company, for personal injuries sustained when automobile in which he was riding was struck by a train. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*William F. Pellow* (*Solomon W. Patek,* of counsel), for plaintiff.

*Frost & Deo,* for defendant.

BUTZEL, J.   Plaintiff recovered a judgment of $6,000 against defendant trustee of the property of the Chicago & North Western Railway Company, referred to herein as railroad, for personal injuries caused by a train running into an automobile in which plaintiff was riding on November 26, 1941. Plaintiff, a miner, lived in Bessemer, Michigan, and was unemployed.   At the time he and a friend named Certano were driving in the latter's car to a mine for the purpose of obtaining employment.   He had worked at the Penokee mine in Ironwood, situated near the crossing involved in the accident.   The mine had been shut down for some time.   They passed the crossing, going along the county road, and on their arrival at the Ironton office they were told that the foreman or captain was at the Penokee mine.   They thereupon decided to drive there and see him.   At this time, about 10:30 a. m., as they were driving in a westerly direction on the north side of the highway, defendant was moving a short train consisting of an engine and three flat cars northerly across the county road in Gogebic county.   As the cars were being pushed across the road with the engine in the back, the col-

lision occurred. A stockpile, bus shanty, rockpile and other objects had interfered with Certano's vision and when he finally saw the train, it was too late to avert the accident. These obstructions leveled off a short distance east of the first railroad track. The wooden shanty was approximately 10 feet wide, 12 feet long and 12 feet high, and was situated about 50 feet east of the first track of the crossing, approximately 30 to 40 feet south of the south shoulder of the road. The testimony showed that it obstructed the vision to the left as one drove up to the crossing.

The old county road on which Certano was driving was a well-traveled highway. Defendant realized the danger and for the past 10 years the rule and custom was for trains to stop at this crossing and send a flagman out to warn the traffic. The switchman testified that there was danger of collision if they did not stop and warn oncoming traffic. Ordinance No. 26 of the city of Bessemer required the railroad companies running their tracks through the city to keep at each railroad crossing a properly constructed gate or a flagman, et cetera. There is some testimony to indicate that there was sufficient clear space so that had Certano been carefully watching he could have seen the train in time to avoid the collision. However, he testified that he was familiar with the crossing, having passed over it for 15 years, and that he knew that defendant usually had a flagman at the crossing in the event of an approaching train. He further testified that he looked on both sides of the road as he approached the crossing and when he reached a point about 50 feet from the crossing he looked and saw nothing. He did not see the train until he was 15 or 20 feet from the track. Thereupon he applied the brakes. When the automobile stopped, it was approximately

1½ feet east of the nearest rail of the track. When he first saw the train, it was 4 or 5 feet south of the crossing. No warning was given by whistle or bell. The train struck the front end of the automobile on the left side and pushed it one foot to the north or right side before the train was brought to a stop. The color of the leading flat car was the same as the color of the surrounding country. The hill beyond was the same color, dark and cloudy. Plaintiff himself testified largely to the same effect, that he did not see any smoke of the engine to his left, that the view of the tracks to the south cannot be had before reaching the bus station, and that a point 15 to 20 feet from the bus station has to be reached before the tracks can be seen. Also, at the time of the accident, his vision was cut off after the car reached a point 20 feet from the track. The automobile was not badly damaged.

Defendant claims that the driver of the automobile drove it into the flat car so that the front left side of the automobile was badly crumpled up. Plaintiff, on the other hand, claims that the flat car ran into the automobile's left front side. The automobile itself was only mute testimony to the fact that it was damaged. Neither the front bumper nor the tire, however, were injured. The left fender and lamp seem to have received the brunt of the collision. Even assuming that plaintiff and the driver did not exercise such caution as would be expected of them at an unguarded crossing, the crossing must be considered as one that is always guarded and we must further accept the testimony that no bells were rung or whistles blown, that no smoke issued from the locomotive, and that the train was being pushed very slowly so that it evidently made but little noise. The verdict of the jury conveyed such a conclusion. The facts are such that at least the minds of reason-

able men might differ as to whether the driver was guilty of contributory negligence or not. While the defendant failed to observe the city ordinance and its rule and custom of having a flagman warn traffic, it would not excuse conduct amounting to contributory negligence *per se*. It does, however, raise the question whether or not the plaintiff and his driver, under the circumstances where their view was obstructed and with the full knowledge of the practice of having a flagman, and not expecting a train near the mine which was shut down, did have a right to assume that they could proceed with safety. A jury question was presented.

Defendant insists that plaintiff and his driver saw or should have seen the train much further south of the intersection than admitted by them. While there is some force to this claim, nevertheless, it became a question whether under the circumstances of the instant case plaintiff could not largely rely upon defendant observing the law and its custom of protecting the crossing. Under the circumstances, plaintiff would not exercise the extreme care that would be necessary at an unguarded crossing. As stated in *Motyka* v. *Railway Co.*, 256 Mich. 417, on rehearing:

"If one may place no reliance on guards and flagman, why have them?"

It would serve no useful purpose to discuss the many cases with different factual situations referred to by both parties. However, in *Jones* v. *Railroad Co.*, 303 Mich. 114, we held that under somewhat like circumstances the question whether a driver was guilty of contributory negligence in failing to stop after reaching the point from which he had a clear vision down the track was one for the jury.

The claim is made that the verdict is excessive. Plaintiff was laid up an entire year, lost $2,400 that he might have earned during the year had he not been injured, and later worked at $5.96 instead of $6.80 per day. He was not able to perform the duties of a miner. He had not fully recovered from the effects of the accident at the time of the trial. The hospital bill was $93.65 and the doctor's bill amounted to $150. He now has a stiff knee which might be corrected by an operation costing $350. The knee was broken in three places. The doctor thought that if plaintiff was properly treated, he could fully recover from his injuries in a period of six months. Considering also the pain and suffering and inconvenience that plaintiff was put to, we do not find the verdict of $6,000 excessive.

Judgment is affirmed, with costs.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.