**PENNSYLVANIA R. CO. v. ACKERSON.**

No. 11051.

United States Court of Appeals
Sixth Circuit.

June 12, 1950.

William Howard, Kalamazoo, Mich. (Howard & Howard, Kalamazoo, Mich., on brief), for appellant.

Paul E. Cholette, Grand Rapids, Mich. (Charles M. Lilly, Kalamazoo, Mich., Paul E. Cholette, Edward D. Wells, Grand Rapids, Mich., on brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an automobile accident which occurred at the Gibson Street crossing of the appellant (hereinafter called the railroad) in the city of Kalamazoo, Michigan, on December 12, 1947. Appellee, sole occupant of the car, was seriously injured and brought this action against the railroad. The jury returned a verdict in her favor, and this appeal attacks the judgment rendered on the verdict.

The accident occurred about eight o'clock on a clear cold morning. The streets were icy. At Gibson Street, which runs east and west, the railroad has a multiple crossing, consisting of three tracks and a spur track, running slightly northeast and southwest. The spur track angles south from the westerly track and is practically a part of the westerly track at the crossing. Appellee was familiar with the crossing which she traveled every morning to her work. She knew that a train came through in the morning, but it had never held her up. The train involved in the accident was proceeding in a northerly direction, some 40 minutes late into Kalamazoo. Appellee was driving her automobile east on Gibson Street. In order to reach the office where she worked, she intended after crossing the tracks to turn north on Rochester Street, which angles northeast from the crossing.

Evidence was given tending to establish the following facts:

Appellee was moving at the rate of 10 to 15 miles per hour as she entered the crossing. The flasher light was not then operating. She looked both north and south and saw no train. Her view to the south was obstructed by a building on the southwest corner of the crossing, which was within about two feet of the railroad's right of way and flush with the south sidewalk of Gibson Street. Appellee's view to the south was also obstructed by a box car on the spur track, and by three box cars and a gondola car on the westerly track.

After appellee had entered or had crossed the westerly track the flasher lights and gong began to operate, and appellee saw the train some 100 feet away. She applied her brakes and slid 20 to 24 feet, stopping on the easterly track, upon which the train was approaching. She endeavored to reverse but could get no traction, put her car into second gear and tried to pull across the easterly track, almost clearing it. The engine struck the automobile on the right rear side, throwing it north against the railroad's signal post, injuring appellee.

As to many important details of the case the evidence is in conflict. Appellee estimated her speed at 10 to 15 miles per hour. Another witness said she was driving about 15 miles per hour. Referring to the time just before the collision when appellee was blocked by a car ahead turning into Rochester Street, a witness for the railroad said that she stopped a second time upon the track. But two eyewitnesses refused to say that she came to a full stop; one of them said she was barely moving, another, "just creeping." The evidence as to the speed of the train was in sharp conflict. The railroad's witnesses stated that the train was running 7 or 8 miles an hour; that it was slowing down to stop at the New York Central crossing some 390 feet away; but one disinterested witness for appellee estimated its speed at 20 miles per hour, another witness at from 30 to 35 miles an hour. Under a city ordinance of Kalamazoo the speed limit for trains within the city is 25 miles an hour.

Several witnesses testified that the train whistled a city block away from Gibson Street, and that the engine bell was ringing some distance from the crossing. This was

controverted by witnesses who said that they did not hear the whistle or the engine bell. One witness for the railroad heard the bell, but not the whistle. The headlight was burning.

The court charged the jury as follows:

"The court instructs you that the law of Michigan imposed certain duties on the railroad. It was the duty of the defendant railroad to operate its train with reasonable care and watchfulness, and to maintain such a lookout as was reasonably required under the circumstances. Failure of the defendant in the performance of these duties would constitute negligence on its part. The state statute and the orders of the Michigan Public Utilities Commission, promulgated in pursuance of the state statute, required the railroad to maintain flasher light signals equipped with a gong or bell of proper type at the Gibson Street crossing. The crossing was equipped with flasher light signals and gongs or bells as required by law. The train involved in this accident was a through train, and the statute and the orders of the Commission required as to a through-train the flasher light signals and bells should be operated automatically. The flasher light signals and the gongs or bells at the Gibson Street crossing were automatically operated by an actuating switch, which was located approximately twenty feet north of the north curb of Walnut Street, and approximately 265 feet or thereabouts south of the south curbline of Gibson Street. When defendant's through-train passed over the point at which that actuating switch was located on or in the track, the switch was designed to automatically start the operation of the flasher light signals and the bells on Gibson Street. The court instructs you that it was the duty of the defendant railroad, as its train approached Gibson Street, to operate its train at such a speed that the automatic flashers and bells at the Gibson Street crossing would give motorists approaching the crossing a reasonable notice and warning of the approach of the train.

"In other words, as plaintiff was driving east on Gibson Street, approaching the railroad crossing, it was the defendant's duty to have the automatic flasher light signals and bells in operation a sufficient length of time in advance of its train reaching the crossing, so as to give her reasonable notice and warning of the approach of the train. Failure on the part of the defendant railroad to operate its train at such a speed and to operate its automatic flasher lights and bells at the crossing here involved in such a manner as to give plaintiff driving east on Gibson Street a reasonable notice and warning of the approach of its train, would constitute negligence."

The railroad contends that within a city block of the crossing the train whistle was blowing, its headlight was burning, and its engine bell ringing, and before the train reached the crossing the flasher lights and gong were in operation. Hence it claims no evidence of negligence on the part of the railroad was presented, and the court erred in submitting that question to the jury. The railroad also contends that appellee was guilty of contributory negligence as matter of law. These questions were raised by motions for directed verdict and by numerous requests to charge, which were refused by the trial court.

■ We are required to view the evidence in the light most favorable to the appellee in considering the denial of the motions for directed verdict. Anderson v. Kearly, 312 Mich. 566, 20 N.W.2d 728; Lane v. B. & J. Theatres, Inc., 314 Mich. 666, 23 N.W.2d 120; Cole v. Austin, 321 Mich. 548, 557, 33 N.W.2d 78. With this rule in mind, we think substantial evidence was presented supporting the verdict.

■ Ample evidence was introduced to the effect that the time between the first operation of the signal and the arrival of the train at the crossing was extremely short, and an issue of fact was thus presented as to whether there was reasonable warning. Appellee said the front end of her car was half way between the westerly track and the middle track when the flasher signal and bell began to operate. This was corroborated by the witness Ryan, who followed appellee in his automobile and saw the rear of appellee's car east of the westerly track as the bell and flasher went on. A witness driving the second

car ahead of appellee saw the train some 300 feet away when he was at the middle track, and said the signal did not operate while he drove across the tracks. One pedestrian saw the train just about to enter the crossing before the gong sounded. Another pedestrian said the train was two freight-car lengths (about 55 feet) from the south cross-walk when the lights went on.

Appellee and witness Ryan estimated that the collision occurred about the same length of time after the flashing of the light, appellee five or six seconds, Ryan about five seconds. It was conceded that the speed of the train would govern the time elapsing between the first flashing and the arrival of the train at Gibson Street. These facts and their bearing upon the opportunity given appellee to avoid danger after the signal began to operate clearly presented a question for the jury.

As stated by the Supreme Court of Michigan, each grade-crossing case must depend upon its own facts and circumstances, for no two cases present exactly the same conditions. Ortynski v. Grand Trunk Western R. Co., 307 Mich. 61, 67, 11 N.W.2d 326; Jones v. Grand Trunk Western R. Co., 303 Mich. 114, 118, 5 N.W.2d 676. However, the general rule as recently laid down by the Supreme Court of Michigan is that the failure of warning signals is some evidence of negligence on the part of the railroad. In Spenclay v. Grand Trunk Western R. Co., 285 Mich. 421 425, 280 N.W. 813, the court declared that the plaintiff had a right to rely upon the signal system to some extent in concluding that he was not in danger of being struck by an approaching train. In Jones v. Grand Trunk Western R. Co., supra, the trial court considered that it was evidence of negligence that the engine bell was not heard and flasher signals were not working, and that the train failed to give a precautionary warning until the motorist was practically at the crossing; its judgment was affirmed. The failure of the railway to follow its usual custom of having a flagman at the crossing to warn traffic was considered in Silanpa v. Thomson, 309 Mich. 326, 330, 15 N.W.2d 657, to be evidence of negli-

gence. To the same effect is Motyka v. Detroit, G. H. & M. Ry. Co., 256 Mich. 417, 240 N.W. 29, which holds: "Rule that one about to cross railroad track must take all reasonable precaution and be assured that it is safe to cross, and that failure to do so is contributory negligence as matter of law, precluding recovery, is applicable to so-called open crossings, but not to those protected by flagman, since some reliance may be placed on protection afforded at crossing."

While this record does not present the situation of a complete failure of the signal system, it clearly raises the question whether the signal operated so as to give reasonable notice of the approach of the train. Under Michigan law, failure to give such notice constitutes evidence of negligence.

■ Failure to maintain a proper lookout, if shown, also constitutes evidence of negligence. The railroad maintains that the train was proceeding at seven or eight miles an hour. Testimony was presented that when the signal flashed, appellee was on the crossing, and she slid to a stop upon the easterly track; and a witness for the railroad stated that the collision occurred approximately 12 to 15 seconds after the bell began to ring. The engineer conceded that the emergency brakes were applied when the train was four or five feet from the automobile, and already entering Gibson Street. He stated that if the brakes had been applied 50 feet away, the accident would not have occurred. Cf. Huggett v. Erb, 182 Mich. 524, 148 N.W. 805, Ann. Cas.1916B, 352. This presented a question of fact for the jury as to negligence on the part of the railroad, as also did the question as to whether the engine bell and the whistle were sounded in accordance with law. Cinadar v. Detroit, G. H. & M. Ry. Co., 193 Mich. 38, 48–50, 159 N.W. 312.

■ The railroad's principal contention is that appellee was guilty of contributory negligence as matter of law. It urges that appellee was admittedly negligent in not listening and in taking but a fleeting glance for the expected approaching train; in driving upon the familiar crossing at an admitted speed of 15 miles per hour upon

a pavement which appellee knew was icy; in continuing on to the crossing after hearing the warning bell; in stopping on the tracks ahead of the train; in turning into Rochester Street behind a standing car; in not pulling clear of the danger zone. These contentions are in general based either upon erroneous construction of evidence or upon an assumption that facts are established which are disputed. There is no evidence that appellee expected this particular train. She knew that there was a train in the morning and that the crossing was dangerous; but it does not appear that she had any intimation that the train was 40 minutes late and was then approaching.

Evidence was given that as soon as the flasher light operated appellee fully saw the train, accurately estimated its approximate distance and her danger. The cases cited by the railroad as requiring this court to hold that appellee was guilty of contributory negligence because of giving only a "fleeting glance" at the train involve accidents between colliding motor cars. Francis v. Rumsey, 303 Mich. 526, 6 N.W.2d 766; Ayers v. Andary, 301 Mich. 418, 3 N.W.2d 328; MacDonald v. Skornia, 322 Mich. 379, 34 N.W.2d 4. We question whether the precise conduct required in such situations is in every detail required in grade crossing accidents between automobiles and railroad trains. The two situations have inherent points of difference. In any case appellee's glance at the train, judged by her appraisal of the emergency, does not fall within the category of unthinking observations described and condemned in the Michigan decisions cited.

Appellee did not "continue on to the crossing" when the gong sounded. It is not contradicted that she was already on the crossing at that time and on or across the westerly track. She endeavored to pull clear of the danger zone, and there was substantial evidence justifying an inference that she was unable to stop before reaching the main track because the flasher light did not give her timely warning. Nor is it established that the icy street was the sole proximate cause of the accident and

that appellee as matter of law was guilty of contributory negligence in not being able to stop on the icy street. If negligence of the railroad was shown and it coincided with the condition of the streets to produce the accident, the railroad is still liable. Brackins v. Olympia, Inc., 316 Mich. 275, 25 N.W.2d 197, 168 A.L.R. 890. All of these issues were questions of fact rightly submitted to the jury.

Appellee was not in the situation of the driver who does not look at all. Cf. Lockett v. Grand Trunk Western R. Co., 272 Mich. 219, 261 N.W. 306. Nor is this the case of someone who drives upon the track at an excessive rate of speed, Mallory v. Pitcairn, 307 Mich. 40, 11 N.W.2d 318, or crashes through a crossing gate, Barnett v. New York Central R. Co., 295 Mich. 536, 295 N.W. 255. Cf. Benaway v. Pere Marquette Ry. Co., 296 Mich. 1, 295 N.W. 536, in which the decedent drove across the track at approximately 70 miles per hour. The situation is entirely different from that shown in Krouse v. Southern Michigan Ry. Co., 215 Mich. 139, 183 N.W. 768, and Carlson v. Grand Trunk Western R. Co., 308 Mich. 531, 14 N.W.2d 75, where the injured parties had ample time to get out of the car and avoid injury. Here appellee stated that the presence of the box cars on the westerly track to the south of Gibson Street completely obscured her vision, and that the flasher light gave her no warning until she either was on or had crossed the first track. It is not disputed that as the flasher operated, she saw the train about 100 feet away. If her testimony be believed this is the record of a person proceeding cautiously, confronted with a desperate emergency, trying to reverse her car, failing, and then trying to go forward. The summary of the Michigan Supreme Court in Jones v. Grand Trunk Western R. Co., supra, 303 Mich. at page 119, 5 N.W.2d at page 678 accurately describes the theory of this case, which the jury evidently supported: " * * * accepting the testimony most favorable to plaintiff, the driver could not have stopped in time to avoid the collision after reaching the point of clear view of the approaching train." Whether a rea-

sonable man would have acted as appellee did was eminently a question for the jury.

The court correctly charged the jury that if the appellee, through no fault of her own but solely through the negligence of the railroad, found herself upon the track and in a position of imminent danger, and in such an emergency was required to act, without time to consider the best means that could be adopted to avoid the danger, she was not guilty of negligence, if she failed to adopt what subsequently and upon reflection would appear to have been a better method. Chicago & Northeastern Ry. Co. v. Miller, 46 Mich. 532, 538, 9 N.W. 841; Paton v. Stealy, 272 Mich. 57, 261 N.W. 131.

We find no reversible error in the refusal of the numerous charges requested by the railroad. In general they assume as uncontroverted facts which were disputed. The jury was fairly and fully charged upon the material issues of the case.

The verdict of $25,000 is attacked as excessive. In view of the actual hospital and surgical expense incurred, the numerous operations to which appellee was necessarily subjected by the critical nature of her injuries, the amputation of her leg, and the loss of earning power, we conclude that the allowance is not so unreasonable as to amount to an abuse of discretion.

The judgment of the District Court is affirmed.