287 F.2d 662
 Maggie WATSON, Plaintiff-Appellant,
v.
CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia Corporation,
Defendant-Appellee.
Harry WATSON, Plaintiff-Appellant,
v.
CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia Corporation,
Defendant-Appellee.
 Nos. 14192, 14193.
 United States Court of Appeals Sixth Circuit.
 March 14, 1961.
 
 Norman A. Gottieb, Flint, Mich., for appellants, Pelavin & Gottlieb, Flint, Mich., on the brief.
 Robert A. Straub, Detroit, Mich., for appellee, Robert B. Seeley, Detroit, Mich., and Gault, Davison & Bowers, Flint, Mich., on the brief.
 Before McALLISTER, Chief Judge, and MILLER and WEICK, Circuit Judges.
 McALLISTER, Chief Judge.
 
 
 1
 These are appeals by Harry Watson and Maggie Watson, husband and wife, from judgments of the district court in consolidated personal injury cases arising out of a collision between an automobile and a diesel switching engine of defendant railroad. The court directed the jury to return a verdict of no cause of action in the husband's case. The wife's case was submitted to the jury, which returned a verdict of no cause of action. Harry Watson appeals on the ground that the court erred in directing a verdict because, as he contends, the controlling issue was one of fact for the jury. Maggie Watson appeals on the ground that the court erred in its instructions to the jury. Both parties claim error on the part of the court in the manner and scope of its examination and cross-examination of appellants' witnesses, and its declarations before the jury discounting their testimony and stating that they had, by their own testimony, discredited themselves.
 
 
 2
 The facts are as follows: Shortly after midnight on April 21, 1955, Harry and Maggie Watson were proceeding in a Buick coupe automobile on Atherton Road, a two-lane highway in the City of Flint, Michigan. Harry Watson was driving. They were approaching the crossing of the Chesapeake and Ohio Railway Company, where three railroad tracks crossed the highway. The tracks run north and south. The Watsons were driving in an easterly direction at a speed of between 20 to 25 miles per hour. The maximum legal rate of speed at this point was 30 miles per hour. The first track they were approaching was 18 feet from the second tract; the second track was 25 feet from the third track.
 
 
 3
 As the Watsons approached the first track, there was a signal light and bell on their right 12 feet in advance of the first track. When they were about 26 feet from the signal light and bell, the light began to flash. There were numerous obstructions to Watson's view down the tracks, to the right.
 
 
 4
 A second or two after the light began to flash, the switch engine entered the crossing intersection from the right, on the far or easternmost track. Harry Watson, in an attempt to avoid collision, swerved his car to the left, but the right front of the car struck the projecting 'stirrup' of the engine, resulting in the personal injuries suffered by appellants.
 
 
 5
 The district court directed a verdict of no cause of action against Harry Watson on the ground of his contributory negligence. The court, in its consideration of the question, declared to the jury that Watson did not know within what distance he could stop his car at the speed he was traveling. The court further stated that since the average driver should be able to stop the average car, going at 20 to 25 miles per hour, within 54 feet after perceiving the need to stop, Watson was guilty of contributory negligence as a matter of law because his car traveled at least 73 feet after the signal light started to flash. After directing a verdict against Harry Watson of no cause of action, the court, as Maggie Watson contends, submitted her case to the jury, limiting the liability of the railroad for negligence to its avoidance of the collision, under the doctrine of discovered negligence and 'last clear chance'. The jury returned a verdict of no cause of action in the case of Maggie Watson.
 
 
 6
 It is our view, after careful consideration of the record, that the judgments must be reversed as to both Harry Watson and Maggie Watson.
 
 
 7
 Appellants' case was based on the following claimed negligence of the railroad: that it maintained and operated, at the grade crossing in question, 'highway crossing protection in the form of an electric combination bell and alternate flashing red lights,' which were 'installed and synchronized to go into operation upon actuation by an approaching train'; and that the mechanism at the time of the collision was so synchronized that the lights and bells were actuated and went into operation for an unreasonably short period of time before the engine reached the crossing, thereby misinforming-- or not informing-- highway traffic as to what action to expect on the part of trains in the immediate vicinity; and, as a result thereof, appellants' automobile proceeded onto the crossing and collided with the switch engine, causing the injuries complained of.
 
 
 8
 To support their claim, appellants introduced evidence showing that they were driving at the rate of between 20 and 25 miles per hour as they approached the crossing; that the signal flasher at their right was 12 feet in front of the first track; that it started flashing when they were 26 feet away from it; that the automobile could not be stopped, at a speed of 25 miles per hour, in less than 54 feet, and that it woudl have required an additional 'perception time factor,' or reaction time, in which to stop, and that an average driver in an average car, under average conditions, would require at least 67 feet in which to stop, when going at the rate of approximately 25 miles per hour. From the point where the Watsons first saw the signal light flash to the point of collision was approximately 73 feet, as certain witnesses testified. Instead of 73 feet, it was actually 81 feet according to the testimony of appellants.
 
 
 9
 The trial court held that Harry Watson should have been able to stop his car within 54 feet, and that his failure to do so was contributory negligence resulting in the collision. The court further said that, counting the 'reaction time and everything else,' he should have been able to stop within 67 1/2 feet, which would have brought him, as the court assumed, to a stop 4 feet from the track on which the switch engine was traveling, and thus have avoided the collision. This is extremely close figuring in determining, as a matter of law, that Watson was guilty of contributory negligence. It is, however, unnecessary to resolve this point. For it is our view that the case does not turn upon Watson's ability or failure to stop his car within 54 feet, or within 67 feet, or within the distance necessary to avoid collision, after seeing the flashing light of the crossing signal which, from the testimony, would be 81 feet-- 26 feet to the flasher; 12 feet from the flasher to the first track; thence 18: feet to the second track; thence 25 feet to the third track.
 
 
 10
 Both Harry Watson and Maggie Watson were completely familiar with this crossing. They passed over it several times a day. These tracks were used only for switching operations. As heretofore mentioned, there were three tracks which crossed the highway-- the first, 12 feet beyond the crossing signal; the second, 18 feet beyond the first track; and the third, 25 feet beyond the second track. The crucial point in this case is whether the flashing signal was actuated only a second or two before the Watson car reached it. If Watson was driving at a legal rate of 20 to 25 miles per hour, and the light started to flash when he was only 26 feet away from it, then the question whether Watson should have stopped his car within the shortest distance possible, at the rate he was traveling, is not, in itself, decisive.
 
 
 11
 Watson, knowing that there were three tracks ahead of him, would have been in deadly peril if he had applied his brakes with full force immediately when he saw the light flash, for he was then, according to appellants' evidence, 26 feet away from the light, or only 38 feet from the first track. If he had been able to stop his car in 40 feet, he would have stopped on the first track. If he had been able to stop his car in 50 feet, he would have been on the second track; or if he had stopped his car in approximately 80 feet, he would have been on the third track. When the signal started to flash, Watson did not know on what track the engine was coming, or from what direction it was coming. He did not know how near it was to the intersection of the highway. He did not know whether, if he instantly put his brakes on, he would stop on one of the three tracks or between them. What he did was to remove his foot from the accelerator without putting the brakes on. A few seconds later, when he saw the engine, he immediately threw the brakes on and turned to his left. Should he have, in the exercise of due care, acted differently? Should he have taken the chance of stopping his car between the first track and the second track, or between the second track and the third track; or should he have taken the chance of stopping on one track rather than another, not knowing on which track the train was coming? Appellants' case is founded on the claim that the signal light did not flash until it was to late for him to stop his car and avoid the tracks. That presents a question of fact.
 
 
 12
 In Pennsylvania Railroad Co. v. Ackerson, 6 Cir., 183 F.2d 662, 664, it was claimed by the plaintiff that there had not been a reasonable warning of the approach of a train at a railroad street intersection; that the view of the plaintiff was obstructed; and that she thereby found herself in a position of imminent danger, requiring her to act in an emergency. On appeal, the court held that 'Ample evidence was introduced to the effect that the time between the first operation of the signal and the arrival of the train at the crossing was extremely short, and an issue of fact was thus presented as to whether there was reasonable warning.'
 
 
 13
 The district court was in error in holding that Watson was guilty of contributory negligence as a matter of law because he did not stop his car in time to avoid the collision. The question of appellee's negligence, and Watson's contributory negligence, were jury questions.
 
 
 14
 With regard to the case of Maggie Watson, the court submitted the issue of the railroad's negligence to the jury limited to the question whether the railroad was guilty of negligence under the doctrine of discovered negligence and 'last clear chance.' As in Harry Watson's case, it was, however, for the jury to determine whether the railroad was guilty of negligence in the manner in which it operated the crossing signals, as well as under the 'last clear chance' rule.
 
 
 15
 The district court stated that Harry Watson had testified that he did not know in what distance he could stop his car at the time he saw the signal light flash. Insofar as this is relevant, it is to be said that a fair reading of the testimony disclosed that Harry Watson's best judgment was that he could stop his car at that time within a distance of 50 to 60 feet.
 
 
 16
 Counsel for appellants claim that the trial judge erred in the manner and scope of his examination and cross-examination of appellants' witnesses and his remarks before the jury discounting their testimony during the course of the trial. In advancing the contention that the trial court so erred and that its action constituted reversible error, counsel for appellants, in their brief, in a most commendable manner, 'state for the record that they have but the highest respect and regard for the able trial judge and are quick to concede that the error complained of derives not from bias but from the trial judge's uncompromising zeal.' Moreover, it is to be noted that, in numerous places in the record, it is evident that the trial judge voiced equal comment and criticiam of appellee's case and the manner in which it was being presented, without, however, any display of ill temper or bias. However, the instances of the trial court's examination and cross-examination of witnesses and colloquies with counsel in the presence of the jury, are so numerous and extensive, so filled with questions-- direct and rhetorical-- so crowded with examples of similar and dissimilar factual situations, and with such a plethora of comment, interesting, unusual, and colorful, that in many cases the testimony and determinations and instructions which, in crucial instances, would be of the utmost importance on review, become,-- as they appear in the printed record,-- frequently unintelligible; and this applies to the proceedings embodying the effort and action of appellants' counsel in attempting to save questions for review and the court's rulings thereon. We are of the opinion that appellants; contention of reversible error on this phase of the case has merit.
 
 
 17
 In accordance with the foregoing, the judgments of the district court are set aside, and the consolidated case is remanded to the district court for a new trial.